Charles S. Colden, J.
This is a consolidated action consisting of two separate taxpayer’s suits which the plaintiff, a former Mayor and trustee of the Village of Babylon has instituted pursuant to section 51 of the General Municipal Law. The present Mayor and the members of the Village Board of Trustees are defendants in both actions. The County of Suffolk is the only additional party defendant in the first action, hereinafter referred to as “Action No. 1” and four other defendants, each of whom acquired property through purchase from the village are the only additional party defendants in the second action, hereinafter referred to as “ Action No. 2.” One of such defendants, Charles W. Billings, Ltd., impleaded the Treasurer of the County of Suffolk and asserted in its third-party complaint a cause of action for liability over for any judgment that plaintiff may obtain against it. Said impleaded defendant asserted a cross complaint against the Village of Babylon and the members of its Board of Trustees for judgment over in the event that the defendant Charles W. Billings, Ltd., recover on its third-party complaint.
It is the position of the plaintiff that during his term as mayor nearly 46 acres of land owned by the County of Suffolk on the easterly boundary of the village of Babylon were in March, 1945 duly transferred to said village for the nominal sum of $1 upon its representation that this land was to be used for park purposes. By the first cause of action alleged in Action No. 1 against all of the defendants therein named, except the County of Suffolk, plaintiff seeks judgment restraining the defendants, constituting the Board of Trustees of the village, from taking any further steps to consummate a certain contract that was entered into by the village with one Clarence M. Davison (not a party to this action) in July, 1953. Under the terms of this contract, the village agreed to convey to said Davison almost 22 acres of the afore-mentioned property, he in turn agreeing to improve, landscape and beautify an additional four and one-half acres thereof as a public park, in accordance with certain plans and specifications, before the conveyance to him. This contract, asserts the plaintiff, was illegal because (a) the property to be conveyed to Davison was acquired for park purposes which under section 89 of the Village Law could not *309 be conveyed without prior legislative approval, (b) one of tire terms of the contract made the rezoning of the property to be conveyed from residence to business a condition thereof and that this was in violation of article 6-A of the Village Law in that it was agreed to rezone village property by contract instead of comprehensive plan and (c) that the transaction was a mere subterfuge to award a contract for a public improvement in excess of $2,500 without first having advertised for bids as required by section 332-a of the Village Law.
In the second cause of action alleged against all of the defendants named therein, including the County of Suffolk, the plaintiff seeks a reformation of the deed from said county to the village so as to restrict the use of the land conveyed by the county to park purposes, the drawer of the deed having inadvertently failed to insert such restriction therein.
Heretofore Special Term dismissed the second cause of action on motion of the defendants other than the County of Suffolk. The plaintiff appealed from the order entered on such dismissal on December 1, 1954. Thereafter by a notice of motion dated February 1, 1955 the defendants other than the County of Suffolk moved to dismiss said appeal for lack of prosecution. By an order to show cause, dated February 3, 1955, the plaintiff moved in the Appellate Division for an order directing the defendant County of Suffolk to join in the appeal. By separate orders dated February 14, 1955 the plaintiff’s motion was denied and that of the defendants other than the County of Suffolk granted and the appeal dismissed (285 App. Div. 893).
In the light of the foregoing the court can perceive no basis for entertaining that cause of action against the grantor the County of Suffolk alone, whatever the tenor of its formal answer. Moreover, this court agrees with the views expressed by Mr. Justice Hill who granted the motion to dismiss that cause of action for legal insufficiency on the ground that section 51 of the General Municipal Law did not contemplate an action for the reformation of a deed of conveyance of real property. (O’Shea v. Hanse, 3 Misc 2d 212.) The cause of action for reformation is accordingly dismissed.
The first cause of action in “ Action No. 1 ”, involving as it does the validity of a certain contract that was entered into by the village with one Clarence M. Davison, cannot be decided since the latter was not joined as a party to this action originally or during its course, nor did he himself intervene. He is clearly “ A person whose absence will prevent an effective determination of the controversy or whose interests are not severable and would be inequitably affected by a judgment rendered ” *310 herein. (Civ. Prac. Act, § 193, subd. 1.) However, the court may not dismiss that cause of action for the plaintiff’s failure to join Mr. Davison as an indispensable party. (Civ. Prac. Act, § 192.) A mistrial is accordingly directed with respect to that cause of action, and an order will be signed severing it. This will permit the joinder of Mr. Davison as a party to the action either upon motion of the plaintiff or the defendants. (Carruthers v. Waite Min. Co., 306 N. Y. 136.)
In “ Action No. 2 ” plaintiff alleges in four separate causes of action that certain portions of the property originally conveyed by the County of Suffolk to the village were separately sold to four defendants contrary to law (a) in that said property was to be used solely for park purposes, (b) that such sales were consummated without resolutions of the Village Board of Trustees authorizing the same and (c) that such sales were made for considerations “ so inadequate and improper as to shock the conscience of the Court and reasonable men under similar circumstances.”
Neither the deed from the County of Suffolk, dated March 15, 1945, nor the registration of title perfected by the village on March 18, 1946 contained any restriction or limitation with respect to the use of the 46 acres of land conveyed to it, except, of course, zoning ordinances, building regulations and the like. Neither before nor at the time of the acquisition of the property or subsequent thereto did the village trustees adopt any resolution limiting the use of or dedicating or appropriating the property for park purposes. Nevertheless, the proof shows and the court finds that this land was acquired by the village and conveyed by the county with an informal understanding of developing it at some future time as a public park and a memorial to World War veterans.
The $1 consideration recited in the quitclaim deed from the County of Suffolk was nominal. The unpaid taxes due to the County of Suffolk up to the time it conveyed the property to the village amounted to $1,300. At the same time the village had several tax liens on this property amounting to $3,800 which it cancelled after it acquired title. The amount of the unpaid taxes for 1937-1938, including advertising charges, interest and penalties amounted to approximately $705 for which anyone could have acquired the property at the 1937-1938 tax sale. Yet, there were no outside bidders and the county purchased the land and ultimately acquired title thereto. Since such acquisition no funds were ever appropriated or allocated by the village and its trustees for the development of this property as a public park, nor was any part thereof cleared, improved, developed or used for such purposes.
*311 It is the position of the village trustees that the entire property was not suitable or adaptable for development as a park since the land was rough, low and swampy and below grade of adjoining streets and highways and its improvement as a public park would involve the expenditure of large sums of money and result in an increased burden upon the residents of the village, and that in any event the general character of the neighborhood surrounding the property has changed from residential to business uses and the need to develop the entire property as a park no longer exists.
In McQuillin on the Law of Municipal Corporations (3d ed.) it is stated (vol. 10, pp. 74-75, § 28.37): “ All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use. In other words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title, and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute or charter; and this power is an incidental power inherent in all corporations, public or private.”
And so it was held by the Comptroller of the State of New York in Opinion No. 6252, rendered by him on June 29, 1953 (9 Op. St. Comp., 1953, pp. 251-252). There, the town wherein the village was located, conveyed to it for a money consideration three lots in a residential district. The deed contained no restriction on the use of the property, although at two previous meetings of the village Board of Trustees, not including the one where the proposition of the town was accepted, it was mentioned either in a resolution or elsewhere in the minutes that the property should be a park dedicated to public use. As a matter of fact, the property had never been so dedicated or used as a park and in the opinion of the Board of Trustees was not suitable for such use. Upon inquiry by the village as to whether it could sell such property pursuant to subdivision 3 of section 89 of the Village Law to private persons, without special action by the Legislature, the Comptroller held:
“ The Attorney-General has ruled in recent opinions that a village may not convey park property held for public use without express legislative authority (1948 Atty. Gen. (Inf.) 109; 1947 idem 100).
‘' However, such authority is not necessary where the lands have never been devoted to such use and the municipal authorities find that they are not fitted therefor (Carpenter v. City of Buffalo, 1930, 137 Misc. 618, 244 N. Y. S. 224, affd. 232 App. Div. 868, 249 N. Y. S. 929; 4 Op. State Compt. 574, 1948; Anno. 141 A. L. R 1447, 1457).”
*312 In Carpenter v. City of Buffalo (137 Misc. 618) upon which the Comptroller in part relied, the court said (p. 620): “ Surely, if the city acquires lands for a public use, and later finds that the lands are not fitted for that use, or such public use is abandoned, it should have the right and the power to sell the lands in question.”
Inasmuch as the land involved herein was never dedicated, used or otherwise devoted to park purposes, and neither the deed of conveyance, nor the judgment registering the title to the property in the village, restricted of conditioned its use to such purposes, the Board of Trustees of the village had authority to sell it after determining that it was no longer required for a public use or was unsuitable therefor. (See Village Law, § 89, subd. 3; § 311.)
“ The general presumption is that public officials, as well as boards, act honestly and in accordance with law.” (Matter of Magnotta v. Gerlach, 301 N. Y. 143, 149.) Plaintiff’s proof falls far short of overcoming that presumption by a fair preponderance of credible evidence.
Our Court of Appeals has recently observed in Kaskel v. Impellitteri (306 N. Y. 73, 79): “ The decisions under section 51 make it entirely clear that redress may be had only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes.”
Plaintiff was formerly Mayor of the Village of Babylon and during his administration was favorable to the sale of part of the property at least for the benefit of the community, and with the hope that the funds so realized might be applied to park purposes on the portion of the tract remaining in the ownership of the village. When a new administration came in office, the transactions now challenged came to pass through the following sales of a portion of the 46 acres .originally conveyed to the village:

Grantee

Date of Conveyance

Acreage

Consideration

Port Neck Construction Company ........... Mar. 11, 1952 6.612 $900
Edwin Duryea Mar. 11, 1952 5.853 750
Glaeca Mora Equipment Corp................ Apr. 22, 1952 2.497 475
Charles W. Billings, Ltd. Oct. 30, 1951 64'xl20' 325
*313 The record shows that each of the foregoing sales was consummated pursuant to resolutions adopted at meetings duly held by the Board of Trustees following the receipt of appraisals made by licensed real estate brokers in Babylon. It is now, of course, a matter of general knowledge that real estate values have increased rapidly and substantially in Suffolk County. Viewed from the standpoint of today’s prices, the consideration for the foregoing transfers was inadequate, but what we are called upon to determine is whether the prices received by the Village of Babylon in the years 1951 and 1952 were so low as to shock the conscience of the court, or whether while low, they were not so much out of line as to constitute waste and as to come within the allowable discretion vested in trustees with which the court does not interfere. That issue may be determined only in light of the facts and events as they existed at the time when the sales were made, not aided or enlightened by those which subsequently took place. (Purdy v. Lynch, 145 N. Y. 462, 476; see, also, United States v. Bell Tel. Co., 167 U. S. 224, 261.)
At the close of the plaintiff’s case, counsel for the plaintiff stated: “ * * * if the Court does not believe Mr. Salomon, I have no case. I won’t waste the time of the Court.” to which the court replied: " Now, wait a moment. You said if I do not believe him. I don’t want that to be given the significance that it might have. I might believe a great deal that he said and yet I might not find enough weight from what he said to carry the burden for you.” The court believes that Mr. Salomon endeavored to be a truthful witness, but the weight of his testimony was not comparable to the testimony given by the defendants’ witnesses. Mr. Salomon was unable to give factual support to his estimate of the value of the property upon which he placed a figure of $10,000 an acre in the year 1951. On the other hand, witnesses for the defendants were able to show that there was much more to be considered in the valuation of this property than in the case of ordinary property. Much of the property involved herein was below grade, swampy and densely covered by underbrush. So far as the record indicates, this property never had any particular market value. From the date of its acquisition by the village in 1945, and until the time when the four parcels above referred to were conveyed — some seven years later — the -village had not expended any sums of money in reclaiming any part thereof or in performing any work or services thereon, and no effort was made to bring about the establishment of a park.
Judge Pfeifle, a competent expert called by the defendants, testified that he had an appraisal of the premises in September *314 of 1951 and placed a value of $100 an acre. He estimated that it would cost $5,000 per acre to clear and fill the property. Frank Bailey, a real estate broker with years of experience as a builder and developer appraised the property sold to Billings at $350 on July 24, 1951 and at the trial stated that the property involved was swamp land three to four feet below grade. Gerald A. Weaver, a civil engineer with experience in the real estate field, testified that it would cost $1,250 per acre to clear the land and $2,000 an acre for each foot of fill, that is to say, that for each acre of land requiring five foot of fill, the cost of the fill would be $10,000. In the light of Mr. Weaver’s testimony, the statement of Mr. Bailey that the 46 acres of land were worthless is understandable.
The real estate broker Rettialata appraised the Billings property at $300. This plot, 64'xl20', would, in the opinion of Mr. Rettialata, cost $760 for the fill which it required. He testified that he had inspected other parts of the tract and did not deem it worth the cost of filling. Sidney Segal, for many years in the real estate business in Babylon, testified that at the request of Mayor Hanse, one of the defendants, he had made an appraisal in September, 1951 of the property now known as the Glacea Mora tract, and reported that any offer over $100 should be accepted.
The weight of the credible evidence favors the defendants. That other men, placed in the same position of responsibility as were the Mayor and trustees here, might well have exercised judgment which would have differed from that of the defendants goes without saying. However, since this court finds no evidence of willful wrongdoing, of illegality, waste or collusion insofar as these four transactions are concerned, nothing can be done about it ‘1 unless every act and decision of other departments of government is subject to revision by the courts ”. (Kaskel v. Impellitteri, supra, p. 78.) The courts “ cannot run the affairs of the village for it. The village board is responsible to the electors for the exercise of powers granted.” (Kelly v. Merry, 262 N. Y. 151, 160.)
Judgment will accordingly be entered on the merits in favor of the defendants, dismissing, without costs, each and every cause of action alleged in the complaints in the consolidated action, with-the exception of the first cause of action in “ action #1 ” which is severed and not disposed of for the reasons already noted above. The third-party complaint of the defendant Charles W. Billings, Ltd., and the cross complaint of the impleaded defendant, the Treasurer of the County of Suffolk, *315 were discontinued without prejudice by written stipulation dated June 27, 1955.
Submit on two days’ notice, (1) order severing the first cause of action in “Action No. 1 ”, and (2) a separate judgment dismissing all other causes of action as aforesaid.