Manuel W. Levine, J.
This is an action brought by the plaintiffs to enjoin the defendants, individually and as Mayor and Board of Trustees of the Incorporated Village of Rockville Centre, from utilizing any portion of a certain parcel of real property for any purpose other than a public park, to declare that said defendants in their official capacity do not have the power to adopt a bond resolution to further any such other purpose and that the bond resolution dated May 19, 1969 be declared illegal, void and of no effect.
The village acquired over a period of years, by three separate deeds, three parcels of property known as Lots 50E, 52 and 48, Block F, Section 38, on the Nassau County land and tax map. The deeds to these parcels imposed no restrictions on the use of the premises conveyed. Lot 50E was purchased by the village August 24, 1934, pursuant to resolutions adopted May 16, June 6 and June 20,1934. These resolutions do not specify any purpose and there is no reference to a park. Lot 48 was *25 obtained by purchase on October 28, 1958 after publication of a notice of condemnation for the purpose of “ extension of municipal utilities, park and recreation area of Mill Biver The deed thereto contains no reference to any specific use. Lot 52 was acquired on October 16, 1959 and the bond resolution dated September 9, 1959 stated “ authorizing the acquisition of certain real property for municipal purposes ”.
The three parcels of land in this action were acquired pursuant to the authority contained in section 89 of the Village Law and not section 169 which is the authority for acquiring lands specifically for park purposes.
Lot 50E was originally used for dumping of the residue from the village incinerator. In 1960 a metered parking lot was constructed on a small portion of lot 52. In 1963 after the State of New York had completed a pedestrian overpass which ended at the property herein involved, the village constructed blacktop walkways where paths had been worn by the people using the overpass. In addition lights were installed, which were later removed because of vandalism, and some park benches placed along the paths. A short time later a few shrubs and trees were planted to discourage ball playing due to complaints. The testimony established that people use the walks and that children play on the property. In addition some use of the benches was established.
In 1958 a master plan was prepared for the village but never adopted. At some unspecified date a sign was erected by the Village Police Department on the premises stating, ‘ ‘ Park Closed — No Trespassing Between Sunset-Sunrise by order of BVC P.D. ’ ’. The village has published annual reports in which there are references to the Mill Biver Park area. In one of these reports 1963 there is a specific reference to the property here involved as having been made into a “ sit-down park However, there was no resolution adopted or any official act of the trustees with respect to this land.
The court viewed the property and found that there were a few shrubs and some trees on the property as well as four or five park type benches along the walks. It was also noted that there had been some recent filling in of the low area by the river.
The village intends to build a village hall with parking on approximately 18% of the property and has adopted a bond resolution to pay for it.
The proof in this action revealed that the village has a fairly good percentage of lands devoted to park and recreational use, some of which is very close to this same Mill Biver area.
*26 The plaintiffs contend that this park is now restricted to such use and no portion of it may be used for anything else unless the State Legislature gives the village specific authority to change the use.
The law is clear that where land is acquired with a restriction for park use in the deed, or by an authority whose power is restricted to acquisitions for park purposes, or land is dedicated to park use by the public, such property may not be used for any other purpose unless there is specific authority from the State Legislature. (Brooklyn Park Comrs. v. Armstrong, 45 N. Y. 234; Williams v. Gallatin, 229 N. Y. 248; Rivet v. Burdick, 255 App. Div. 131; Aldrich v. City of New York, 208 Misc. 930; O’Shea v. Hanse, 3 Misc 2d 307.) This principle of law has never been applied to land acquired for general municipal purposes and used for a park. It is to be noted at this point that the proof of use as a park in this, action was meager.
The question in this case is were'the acts of the village sufficient to constitute a dedication of the premises as a park. It is to be noted that this court is well aware of the need in suburban areas for parks. However, as stated in the concurring decision by Judge Scileppi, concurred in by Judge Burke, in Guarino v. Mine Safety Appliance Co. (25 N Y 2d 460, 466): “ Surely the pure consideration of what is good for society cannot be the guiding star of the judiciary, else we will have but two branches of government instead of three.”
There appears to be no New York cases determinative of this question. In the instant case the property was acquired for general municipal purposes with moneys from the general fund. Consequently, the land could have been used for any public purposes. The fact that the village cleaned up the property, put in a few shrubs and trees, walkways with four or five benches, and it was used to a small degree as a park does not seem to place this property into a trust for park purposes.
In other jurisdictions there are cases holding that land acquired by a municipality without restriction even though used as a park may be put to other uses. (City of Marysville v. Boyd, 181 Cal. App. 755; Carlson v. City of Fremont, 180 Neb. 262; 10 McQuillin, Municipal Corporations [1966 ed.], § 28.52a, p. 175.)
This court’s determination is that land acquired in fee for general purposes without any restriction even though used for a park may be used for other municipal purposes. To hold otherwise would cause public officials to bar the use as a park of land acquired for future needs. This certainly would not be in the public interest. Further, the village trustees are given *27 the power to hold and manage municipal property. This includes determining what use shall be made of it.
The defendants are entitled to judgment dismissing the first cause of action and declaring that the bond resolution of May 19, 1969 is valid and the issuance and sale of serial bonds authorized thereby are within the power of the village board.