L. Kingsley Smith, J.
The complaint in this action seeks a judgment against the City of Long Beach declaring that the *764 provisions of Local Law No. 9 of the Local Laws of 1970 are illegal, unconstitutional, null and void and of no force and effect and that such Local Law No. 9 is contrary to reservations, covenants and restrictions in prior instruments of record.
Local Law No. 9, which is the subject of this action, was enacted by the Council off the City of Long Beach on November 4,1970. It was entitled “ A local law amending the city charter re: Beach Park.” By the terms of Local Law No. 9, section 98 of the City Charter was amended to read as follows:
“ § 98. BEACH PARK.
“ 1. The land owned with all the improvements thereon by the city of Long Beach extending from the northerly line of the boardwalk as now or hereafter constructed or if extended east and west, southerly to the high water line of the Atlantic ocean, and from the westerly to the easterly boundary of the said city, is hereby created a public park for the residents of the city of Long Beach and their invited guests. [Italics inserted to indicate new matter added by the amendment.]
“ 2. The Council of the city of Long Beach shall by ordinance provide for the supervision and maintenance of such public park by the city, including the furnishing of an adequate number of lifeguards and their necessary equipment, the cleaning of the beach front, the maintenance of such other facilities as the council may deem necessary, and the said ordinance shall prescribe a reasonable charge to be collected by the city from persons entering upon said public park.”
Section 98 of the Charter was originally added to the Charter by Local Law No. 4 of the Local Laws of 1936, enacted April 21, 1936. Section 98 of the Charter, as amended in 1970, is identical with section 98 as originally enacted except that the amendatory legislation added to subdivision 1, as above noted by italicizing, the language ‘ ‘ for the residents of the city of Long Beach and their invited guests ” immediately after the words “ public park ” in the original version.
Thereafter, pursuant to the authority granted by the City Charter and by Local Law No. 4 of the Local Laws of 1936, the City Council enacted an ordinance for the supervision and maintenance, regulation and control of the ocean beach park and the fixing of charges for its use. That ordinance is believed to have been Ordinance No. 351 adopted April 6, 1937. In succeeding years the ordinance was from time to time amended in various respects, but principally in regard to charges for the use of the park. In 1957 the City Council adopted an ordinance in relation to the revision, codification and amendment of its ordinances *765 and which created the ‘ ‘ Municipal Code of the City of Long Beach.” The Municipal Code became effective January 1,1959. The ordinance provisions relating to the ocean beach park created in 1936 became article 1 of chapter 6 of the Municipal Code under the title “ Ocean Beach Park.”
Section 1 of Ordinance No. 351/37 was entitled “ Creation of Ocean Beach Park.” Making reference to authority granted by section 97 of the City Charter and Local Law No. 4 of the Local Laws of 1936, section 1 (now Municipal Code, § 6-101) described the area of the public park in the same manner as Local Law No. 4 of the Local Laws of 1936 and provided that the land and improvements thereon owned by the City of Long Beach in such area were “ hereby created a public park to be known as the Ocean Beach Park of the City of Long Beach.” The balance of the provisions of the Ordinance No. 351/37 dealt with a variety of matters pertaining to supervision, maintenance, regulation and control of the public park. Section 9 of Ordinance No. 351/37 set forth the charge or price for admittance to and use of the Ocean Beach Park and its facilities for bathing purposes. With the adoption of the Municipal Code the matter of such admission charges was covered in section 6-106 of article 1 of such code.
On April 6, 1971 'the City Council adopted Ordinance 1034/71 entitled “ Ordinance Amending the Municipal Code Be Ocean Beach Park.” This amendatory ordinance completely revised section 6-106 of the Municipal Code and provided for a new schedule of charges for residents of the City of Long Beach and their guests.
At all times prior to 1970 the Ocean Beach Park had been open for use by residents and nonresidents.
A previous attempt by the Council of the City of Long Beach to restrict the use of1 its Ocean Beach Park to residents of the city and their invited guests became the subject of litigation in 1970. On April 7, 1970 the Council adopted Ordinance No. 967/70 for the purpose of amending the provisions regulating who was permitted to use the Ocean Beach Park and the conditions under which persons could make use of such facilities. Briefly stated, prior to the 1970 amendment no person, except children 12 years of age or under, were permitted to use the area unless they had paid admission charges fixed by other portions of the code and no one was permitted to use the area for any purpose between the hours of 8:00 p.m. and 9:00 a.m. except employees engaged in the operation of the Ocean Beach Park.
*766 Ordinance No. 967/70 retained the original provisions set forth in section 6-105 but added, in a separate subdivision, language which restricted the use of the Ocean Beach Park and the waters adjacent to it to residents of the City of Long Beach and their invited guests. That ordinance was challenged in the case oKalin v. City of Long Beach (Nassau County Index No. 4711/70) which originally took the form of an article 78 proceeding but which was ultimately treated and tried as an action for a declaratory judgment. The plaintiffs (petitioners) in that prior action were not identical with the plaintiffs in this action although Albert and Paula Gewirtz, who are plaintiffs in the present action, were plaintiffs (petitioners) in such earlier action. In that earlier case the court held that the attempt, in effect, to amend Local Law No. 4 of the Local Laws of 1936 by the enactment of Ordinance 967/70 was not an acceptable method of converting the public park from a facility open to the public at large to one open only to the residents of the City of Long Beach and their invited guests. The court in that case further indicated that the City of Long Beach was bound by1 Local Law No. 4 of the Local Laws of 1936 until that law was amended in the manprescribed by the Municipal Home Rule Law (Kalin v. City of Long Beach, supra, decision of Oppido, J., Sept. 21, 1970). The court in the earlier case expressly stated that it- did not reach the challenge to the constitutionality of Ordinance 967/70 nor did it find it necessary, in view of its holding that such ordinance was invalid, to determine other issues relating to such matters as ownership of accreted lands and the claim of extinguishment of a right of way by adverse use.
Following the determination made in the earlier case, the Council of the City of Long Beach sought to achieve the goal of a restricted beach by enacting Local Law No. 9 of the Local Laws of 1970 on November 4, 1970 and it is /hat latest enactment which has been the subject of challenge in the present action.
As originally commenced, the plaintiffs in this action were Albert Gewirtz and Paula Gewirtz. At the commencement of the trial a motion was made and not opposed to permit one, Judith Friedlaender, to intervene as an additional party plaintiff. That motion was granted and it was consented in open court that the action might proceed under an amended title showing the plaintiffs to be Albert Gewirtz, Paula Gewirtz and Judith Friedlaender as plaintiffs. It was further stipulated that the amended complaint (proposed complaint of plaintiff-intervenor) which had been served upon the defendants in this action on or about May 28, 1971 would constitute the complaint of the plain *767 tiffs and that the answer previously interposed to the original complaint would stand as the answer to the said amended complaint. It should be added that the amended complaint is identical in all respects with the original complaint except that a sub-paragraph “ (b) ” was added to paragraph 1 to allege the status of the plaintiff-intervenor, Judith Friedlaender.
In the earlier litigation referred to above it was claimed by the City of Long Beach that the plaintiffs (petitioners) in that earlier action lacked standing to sue. It was determined in the earlier litigation that two of the four plaintiffs (petitioners) did lack standing. However, it was also determined that Albert Gewirtz and Paula Gewirtz did have standing to maintain that earlier action. In the present action the defendants have not questioned the .standing of the plaintiffs Gewirtz nor that of the plaintiff-intervenor Friedlaender.
The plaintiffs Gewirtz are nonresidents of the City of Long Beach and are residents and taxpayers of the State of New York, residing at Lido in the Town of Hempstead, Nassau County, New York. The plaintiff-intervenor, Judith Friedlaender, is a nonresident of the City of Long Beach and is a resident and taxpayer of the State of New York, residing in the County and City of New York.
A summary of the essential allegations set forth in the complaint of the plaintiffs follows. The beach front within the corporate boundary lines of the defendant, City of Long Beach (hereinafter referred to as “ City ”) was acquired by the city in the period 1935 to 1937 by conveyances which recited that the premises were subject to reservations, covenants and restrictions as well as rights and conditions contained in prior instruments of record affecting the premises (par. 3). Simultaneously with the acquisition of such beach area the city applied for Federal funding for beach and ocean front improvements including demolition of the old and the erection of a new boardwalk, construction of stone jetties and supplementing the beach front with sand fill (par. 4). In 1935 the Federal Government, through one of its agencies, issued a commitment for a grant and loan subject to its rules and regulations and that on October 19,1935 the Common Council of the city adopted a resolution accepting the offer of the Federal Government (par. 5). Preliminary to such Federal funding, the United States Engineers Office granted permission to the city for the proposed beach and ocean front improvements upon condition that the city would not attempt to forbid the full and free use by the public of all navigable waters at or adjacent to the work or structure (par. 6). Deeds *768 to predecessors in title contain reservations in favor of the Town of Hempstead and its inhabitants as to rights to land under water adjacent to the property and beyond mean high water side on the northerly side of the premises and also contained a reservation in favor of the people of the Town of Hempstead of a right of way ,on Long Beach Road over the premises to the ocean front (par. 7). By the enactment on April 7,1936 of Local Law No. 4 of the Local Laws of 1936 the city created a public park known as “ Ocean Beach Park of the City of Long Beach ” out of the beach and improvements extending from the westerly line of the city to the easterly line of the city and bounded on the north by the northerly side of the boardwalk and on the south by the high water line of the Atlantic Ocean (par. 8). Local Law No. 4 of the Local Laws of 1936 granted the City Council authority to provide by ordinance for supervision and maintenance of the public park and to prescribe a reasonable charge to be collected by the city ‘ ‘ from persons entering upon said public park ” (par. 9). However, Local Law No. 4 of the Local Laws of 1936 did not grant to the city the power to reguv. late the classes of persons entering the beach park nor the power to discriminate between residents and nonresidents of the city (par. 10). After the enactment of Local Law No. 4 of the Local Laws of 1936 and pursuant to an ordinance duly adopted the beach and its improvements were opened to the general public upon payment of a nominal fee collected by the city from persons entering the public park (par. 11). On November 4, 1970 the City Council amended Local Law No. 4 of the Local Laws yof 1936 by enacting Local Law No. 9 of the Local Laws of 1970 providing, among other things, that no person who was not a resident of the city or an invited guest of such a resident was to be permitted in or upon the beach park or to wade, bathe or swim in the waters adjacent thereto (par. 12).
The remainder of the complaint (pars. 13 through 30) sets forth allegations designed to spell out the claim of the plaintiffs that Local Law No. 9 of the Local Laws of 1970 is unconstitutional, ultra vires, illegal, discriminatory and violative of instruments of record.
As previously noted, it was stipulated at the trial that the original answer of the defendant City of Long Beach interposed to the original complaint of the plaintiffs Albert Gewirtz and Paula Gewirtz would also stand as the answer to the amended complaint interposed in behalf of the plaintiffs Gewirtz and the plaintiff-intervenor, Judith Friedlaender. Except for the fact that it contains an allegation concerning the status of the plain *769 tiff-intervenor, the amended complaint is identical in its other allegations with the original complaint.
It should be noted that although the State of New York appeared in this action by the Attorney-General of the State of New York, no answer was interposed by the State of New York.
The answer of the City of Long Beach is essentially a general denial of those allegations of the complaint which charge that Local Law No. 9 of the Local Laws of 1970 is unconstitutional, ultra vires, illegal, discriminatory and violative of instruments of record.
The claim is made by the plaintiffs that the beach has been irrevocably dedicated by the city to the use of the public at large. The city denies this and asserts that from the beginning it intended ‘ ‘ to create and operate the beach park for the benefit of its own residents ” and that the “ use of the beach by nonresidents * * * has not been adverse but has been pursuant to a license or permission granted by the City of Long Beach.” The issue of whether there has been a dedication by the city which precludes it from taking action limiting the use of the beach to residents and their invited guests is thus squarely presented.
It is the general rule that a municipal corporation can dedicate property to public use just as a private person or corporation may do. (15 N. Y. «Tur., Dedication, § 6; 11 McQuillin, Law of Municipal Corporations [3d ed.], § 33.14, p. 664; 23 Am. Jur. 2d, Dedication, § 15, p. 14.) The power of the City of Long Beach to acquire the beach and the boardwalk and to dedicate the area to public use is clear. (General City Law, § 20, subds. 2, 7, 8, 23; § 19; Charter of the City of Long Beach, § 3; cf. §§ 98 and 258,)
It is important to note that the instruments of conveyance by which"the city acquired title to the beach and boardwalk area did not contain conditions or restrictions requiring that the property so acquired be devoted to a specified public use. Had grantors desired to convey property to the city with a condition or restriction that such property continue to be used for park purposes for the benefit only of residents of the city, such a conveyance could have been accepted by the municipality and it would have thereafter been bound by the condition or restriction so imposed. (Charter of City of Long Beach, § 3; General Municipal Law, § 140.) That is not the situation in this case. The city acquired its title to the beach and boardwalk area free of any such conditions or restrictions. It was thus in a position to determine the specific purpose for which this property would be utilized.
*770 The essential elements necessary to establish a dedication are an offer by an owner, either express or implied, to appropriate viand or some interest or easement therein to public use and an acceptance of such offer, either express or implied when acceptance is required, by the public. Thus, it has been said: ‘ ‘ Accordingly, a dedication is generally defined as the devotion of property to a public use by an unequivocal act of the owner, manifesting an intention that it shall be accepted and used presently or in the future. The intention of the owner to dedicate and acceptance thereof1 by the public are the essential elements of a complete dedication. Thus it is vital to a dedication of property to public use that it is to be forever and irrevocable after acceptance, and that it be for a public use. (11 McQuillin, Law of Municipal 'Corporation [3d ed.], § 33.02, pp. 627-630 [citations omitted].)
The question of whether there was an intention on the part of the city to dedicate the municipally-owned beach and boardwalk to public use does not pose a problem in this case. The intent of the city in 1936, as manifested by its official actions, was to dedicate the beach and boardwalk to public use as a park. With title acquired from former owners, the governing body of the city took official action by enacting Local Law No. 4 of the Local Laws of 1936. That local law ‘6 created a public park ’ ’ out of the municipally-owned ocean beach front property and directed the City Council to make provision by ordinance for the supervision and maintenance of the public park and for the collection of a reasonable charge from users of the public park to be prescribed by the same ordinance. (Charter of the City of Long Beach, §§ 98 and 258.) Subsequently, the city followed the direction contained in Local Law No. 4 of the Local Laws of 1936 and adopted an ordinance containing provisions for the supervision and maintenance of the public park and for the collection of charges from those using it. These regulatory provisions, from time to time amended over the years, are set forth in article 1 of chapter 6 of the Municipal Code of the City of Long Beach.
It is difficult to conceive of any method better calculated to express the intent to dedicate its ocean beach front property to public use as a public park than the local law which the city enacted in 1936 and the implementing ordinance which it thereafter adopted. These actions by the city manifested unequivocally an intention to dedicate the municipally-owned property to public use as a public park.
*771 Generally speaking, to complete the dedication process, it is necessary that there he an acceptance of a proffered dedication. Certainly, this is true when the offer to dedicate is one made expressly or impliedly hy a private person or a private corporation. The situation is somewhat different when the dedicator is the municipality. The rule that there must be an acceptance to complete a dedication has been applied in connection with a dedication of land by the State to a city for park purposes. (Oklahoma City v. State, 185 Okla. 219.) On the other hand, it has been held that when a formal dedication of a street is made by the State or by a municipality, no acceptance is necessary. (Arques v. City of Sausalito, 126 Cal. App. 2d 403; McKernon v. City of Reno, 76 Nev. 452.) Reason suggests that when it is the municipality which is making the dedication, the element of acceptance really is not required, or if the element of acceptance is to be insisted upon, it may be implied from the very act of dedication by the municipality. (Cf. 11 McQuillin, Municipal Corporations, § 33.43, p. 737 and § 33.46, p. 746.)
There are various ways in which acceptance by the public may be established. In addition to acceptance shown by express act, there may he an implied acceptance arising from acts of a municipality or its officers and also from use by the public for the purposes for which the property was dedicated. (11 McQuillin, Municipal Corporations, § 33.47, pp. 746-750.) Acceptance has been found in the actions of a municipality or governmental unit which had been done on behalf of the public in making improvements to and maintaining the particular facility. (See Matter of Hunter, 163 N. Y. 542; Pomfrey v. Saratoga Springs, 104 N. Y. 459; Petrie v. City of Rochester, 206 Misc. 96.) In this case the city can be regarded as having played a dual role in the dedication process. As the owner of the beach front area, it manifested the requisite intent to devote its property to public use as a public park by declaring that intent in the form of the 1936 Local Law. When it thereafter adopted the ordinance mandated by the local law and proceeded to supervise, maintain and improve the ocean front facilities, which it had itself declared to be a public park, the city can be regarded as having accepted the facilities on behalf of the public.
Acceptance can also be found in evidence of actual and continued public use. In holding that an area from which highway commissioners had removed a building was in fact part of a public highway by dedication, the Court of Appeals in Cook *772 v. Harris (61 N. Y. 448, 454) said: “ The dedication and acceptance may he proved hy the acts of the parties, and the circumstances of the ease. The owner’s acts and declarations should be such as to manifest an intention to abandon or devote his property to the specific public use. In the case of a highway, the public must accept the highway, and before such acceptance the dedication may be revoked. Such acceptance may be proved by long public use, or by the positive acts of the public authorities in recognizing and adopting the highway.”
In this case, the uncontradicted evidence establishes more than three decades of continuous use of the ocean beach front facilities by the public at large after those facilities were declared to be a public park by the city itself in 1936. Throughout that period no attempt was ever made by the city to limit the class of lawful users of its public park to those who were residents of the city or their guests. Indeed, the city manifested clearly a policy of maintaining its ocean beach park facilities for the benefit of the public at large not only by permitting the facilities to be used by residents and nonresidents alike, but also by adopting schedules of admission charges which imposed different rates for residents and nonresidents. It was not until 1970 that the city for the first time attempted to limit the use of its public park facilities to resident users and their invited guests. It is noteworthy that in practical application the city’s policy of restricted use operates only with respect to a portion of what is actually embraced within its ocean beach park. That is to say, while the language of Local Law No. 9 of the Local Laws of 1970 is couched in terms which literally exclude everyone except residents and their invited guests from the public park in its entirety, this is not actually the fact. The uncontradicted evidence establishes that it is only the beach portion of the public park from which nonresidents are excluded. This is accomplished by setting up controlled points of entry along the beach through which residents and their invited guests are admitted upon presentation of prescribed credentials. The boardwalk, which is elevated above and runs parallel to the beach, has remained open to the public at large and no attempt has been made to restrict its use to city residents and their invited guests. Whatever the practical explanation may be for this difference in policy, there nevertheless is an inherent inconsistency in the adoption of an exclusionary policy in respect of the beach portion of the public park and a nonexclusionary policy for the boardwalk portion.
*773 If the element of acceptance is necessary in this case for a completed dedication to use of the public park and its facilities by the public at large, it is found both in what the city itself has done in operating and maintaining its public park and also in the use which the public at large has made of such facilities over a period of more than 30 years.
Once a dedication has become complete, it is irrevocable. (Cook v. Harris, 61 N. Y. 448,453-454, supra; 23 N. Y., Jur., Dedication, § 33; 26 C. J. S., Dedication, § 34, p. 459; 11 McQuillin, Municipal Corporations, § 33.60, pp. 790-791.) This principle of irrevocability applies equally to completed dedications by governmental entities and municipalities. (11 McQuillin, Municipal Corporations, § 33.60, pp. 791-792.) In support of its contention that the beach has never been dedicated to the use of the public at large either expressly or by implication, the city has urged that a resolution adopted by the City Council in 1936 supports the claim that in creating the public park it was the city’s intention to create and operate a park for the benefit of its own residents. An examination of that resolution shows that it was a resolution adopted for the purpose of creating a commission to guide the city in planning for the operation of the beach area and the boardwalk as a public park. It is true that one of the preambles of that resolution contains language to the effect that it is necessary to plan the method of operation of maintenance “ so that the City of Long Beach, its taxpayers and residents may enjoy to the fullest extent possible the benefits to be derived therefrom. ’ ’ The use of that language in a preamble to a resolution for the creation of an advisory body can hardly be said to exclude the idea that members of the public at large will have access to the park facilities. The actions of the city in the years following the adoption of that resolution clearly point to a policy of a public park open to all. In this connection the language used by Mr. Justice Oppido in his decision in the earlier litigation is apposite: “ The pragmatic interpretation of the City of Long Beach of the word 1 public ’ carries great weight in the resolution of any ambiguity of the word £ public ’. The City’s action in permitting the general public, as distinguished from the residents of the City of Long B.each only, in using the word ‘ public ’ was intended to apply to the general public and was not used in the restricted sense.” (Kalin v. City of Long Beach, Sup. Ct., Nassau County, Index No. 4711/70, Sept. 21,1970, p. 9).
The court finds that the city created ‘ ‘ a public park ’ ’ out of its municipally-owned ocean front property, it intended to *774 create and to maintain a facility open to use by the public at large. The court further finds that these premises designated by the city itself as a “ public park ” were maintained, improved and operated so as to afford untrammeled access to the public at large from 1936 to 1970 subject only to the payment of fees in accordance with a schedule established from time to time by the Council of the City of Long Beach. In addition, the court finds that from the time the ‘ ‘ public park ’ ’ was established until 1970 the public at large used the facilities. In the light of this history of a public park open to the public at large, the court finds that there has been a completed dedication of the ocean beach facilities to the use of the public at large and that such dedication is irrevocable.
Inasmuch as the court has found from the evidence an irrevocable dedication of the public park facilities, the court deems it unnecessary to discuss, although it has considered, the cases cited by the plaintiffs in support of the theory of implied dedication flowing from acquiescence in continued public use. Those cases (Seaway Co. v. Attorney General, 375 S. W. 2d 923 [Texas Civ. App. 1964]; State ex rel. Thornton v. Hay, 254 Ore. 584; Gion v. City of Santa Cruz and Dietz v. King, 2 Cal. 3d 29), were concerned with the acquisition by the public of a vested right to use beaches which were privately owned of record, such public right having been found to exist either on the theory of an implied dedication to public use through acquiescence of the owner or by application of a theory of custom. In the circumstances of this case, the court does not regard those decisions as apposite.
The claim is made by the defendant city that since the prop-x erty in question was not acquired from the State of New York or for any special purpose, the city is free to do with such property what its legislative body determines should be done. If this argument is valid, it would logically follow that such power would include authority to dispose of the park property or to devote it to some other use. The argument assumes that the property was not acquired for any special purpose and that it has not been dedicated for public use as a park. While it is true that the instruments of conveyance by which the city acquired title to the property did not contain specific conditions or restrictions requiring that the property acquired, be used' for a specific public governmental use or purpose, the evidence shows that even before acquisition of the property was fully complete, the city had taken steps to obtain Federal funds to finance measures designed to lessen the erosion of the beach *775 and to reconstruct the boardwalk. The action thus taken when combined with what was done by the city within a short time after title to the area was acquired, i. e., the creation of a public park out of the land so acquired, strongly suggests that in reality the property was acquired with the purpose in mind of devoting it to a special public use. In any event, the court has found that the city made an irrevocable dedication of the property to public use as a park. Once this was accomplished, the city’s freedom of action was circumscribed. In this State the principle is well established that public park property may not be alienated without express legislative permission. (See Brooklyn Park Comrs. v. Armstrong, 45 N. Y. 234, 243; Incorporated Vil. of Lloyd Harbor v. Huntington, 4 N Y 2d 182, 190; Aldrich v. City of New York, 208 Misc. 930, 938-939, affd. 2 A D 2d 760; Miller v. City of New York, 15 N Y 2d 34, 37; City of Rochester v. Carnahan, 57 Misc 2d 704, 706; cf. Pearlman v. Anderson, 62 Misc 2d 24, 26, affd. 35 A D 2d 544; see, also, 10 McQuillin, Municipal Corporations [3d ed.], § 28.38, pp. 90-100.)
When the city dedicated this property to use as a public park and thereafter devoted it to the use of the public at large for upwards of 30 years, it put itself in the position of holding that property subject to a public trust for the benefit of the public at large. Public parks occupy a special position insofar as the public at large is concerned and this is borne out by numerous expressions to that effect found in the decisions of this State. (Williams v. Gallatin, 229 N. Y. 248, 253; Miller v. City of New York, supra, p. 37; Incorporated Vil. of Lloyd Harbor v. Huntington, supra, p. 191; Aldrich v. City of New York, supra, p, 940.) Attempts to divert public park property to other uses have often been restrained.
The power of a municipality to permit encroachments upon park purposes or to alienate public parks depends upon legislative authority which, it has been said, must be ‘ ‘ plainly conferred”, “ special ” in nature, “specific”, “direct” or “ express.” In short, the legislative authority to change the use of property held for park purposes or to sell such property must be plain. (See Aldrich v. City of New York, supra, p. 939.) In this case no such plain legislative authority has been granted to the city to discontinue, sell or delimit the class of users of its public park. If anything, the power appears to have been withheld by the Legislature. It is expressly provided by subdivision 2 of section 20 of the General City Law that “ the rights of a city in and to its water front, ferries, bridges, wharf property, land under water, public landings, wharves, docks, *776 streets, avenues, parks, and all other public places are hereby declared to be inalienable, except in the cases provided for by subdivision seven of this section. ’ ’ Subdivision 7 of section 20, among other things, empowers a city 11 to lay out, establish, construct, maintain and operate markets, parks, playgrounds and public places, and upon the discontinuance thereof to sell and convey the same ”. However, it has been held that the provisions of subdivision 7 do not eliminate the need for special legislative authority for alienation of a city’s park lands. (Matter of Central Parkway, 140 Misc. 727.) The powers granted by the City Charter do not include any authority to dispose of park property or to change its use. (Cf. City Charter, § 97.) If it was the intention of the Legislature to confer authority to change the use of the public park or to alienate it, the requisite authority could have been conferred in plain and unmistakable terms.
The Legislature has seen fit, in certain instances, to grant x authority to local governmental subdivisions to limit the class of users to local inhabitants. Instances of such expressly conferred legislative authority are found in the case of so-called self-supporting improvements in towns and villages. In the case of towns the definition of the term ‘ ‘ self-supporting improvements ” includes a bathing beach or recreational facility and parking areas in connection therewith established pursuant to article 9-A of the Town Law from which revenues are obtained by imposing and collecting rates, fees, tolls or admissions. (Town Law, § 140.) Under the provisions of article 9-A of the Town Law, the town board of any town in Suffolk County and of any suburban town has the power to acquire or establish self-supporting improvements and to establish charges for their use. (Town Law, §§ 141, 142.) In addition, express legislative power has been conferred on such town boards to regulate the use of the self-supporting improvements including the power to limit the use of such self-supporting improvements to residents of the town. (Town Law, § 143.) In the case of villages, article 10-A of the Village Law deals with self-supporting improvements. By definition the term “ self-supporting improvement ’ ’ means, in the ease of a village, any recreational facility and parking areas in connection therewith established pursuant to article 10-A of the Village Law from which revenues are obtained by imposing and collecting rates, fees, tolls or admissions. (Village Law, § 250.) A similar pattern of legislative authority for the acquisition or establishment of self-supporting improvements in villages and for *777 the imposition of charges for their use is granted under the Village Law as it is under the Town Law (Village Law, §§ 251, 252). With respect to the use of such self-supporting improvements specific legislative authority has been granted to the board of trustees of any village to limit the use of self-supporting improvements to residents of the village. (Village Law, § 253.) It is important to note, in connection with the foregoing ^ legislative authorizations not only that they are specific and plain but that the power of limiting use to local inhabitants is conferred in connection with improvements created and designed to serve the inhabitants of a limited area.
Specific power is given to municipal corporations to sell, transfer, lease or lease to or exchange with another govern- . mental entity any real property owned by such municipal corporation. (General Municipal Law, § 72-h.) Subdivision (b) of the cited section provides that the power granted shall not apply to any real property which is made inalienable under the provisions of any general, special or local law or of any charter. The Comptroller of the State of New York has expressed the opinion that a county may not convey property dedicated to park purposes to a town without specific legislative authorization. (21 Op. St. Comp., 1965, p. 477.) In his opinion, the Comptroller reasoned as follows:
1 ‘ In the case of counties, it is true that the inalienability of property devoted to park purposes does not emanate from a statutory prohibition (cf. Gen City L § 20(2); In Re Central Parkway (City of Schenectady, supra). The inalienability of park lands, in the case of counties, stems from the application of a common-law rule. However, as indicated above, a general authorization such as contained in § 72-h(l) would not authorize the alienation of park lands (see 15 Op. St. Compt. 199 [1959]).
‘ ‘ The fact that in the present case the town will continue to use the property for a public park does not, in our view, alter the situation. The controlling factor is the ‘ trust for the public ’ insofar as the county is concerned. Thus, despite the fact that the lands may continue to be used as a park, the trust in favor of all of the inhabitants of the county is destroyed by an alienation to the town. Therefore, express legislative authority to alienate the property is required.”
It is thus clear that municipally-owned property that has been dedicated to use as a public park is held in trust for the public at large and may not be diverted to other uses or sold without express legislative authority. The same principle of a *778 trust for the public prevents the municipality from taking action which operates to exclude the public at large from such a public park and to limit use of the public park to local inhabitants unless the municipality has been granted express legislative authority to do so. To hold otherwise would be to permit the municipality to achieve a result which violates the public trust principle since as to those who are excluded from the public park the exclusionary policy is as much a diversion of use as would be the case if the municipality changed the use of the park or sold it.
The view that land which has been dedicated to use as a public park may not be diverted to another use or alienated finds support in the decisions of other States. (See Douglass v. City Council of Montgomery, 118 Ala. 599; Rayor v. City of Cheyenne, 63 Wyo. 72.)
The parties have not brought to the court’s attention any case which has directly passed upon the power of a municipality to limit the use of a seaside public park to local inhabitants. The court’s independent research has similarly failed to turn up such a case. However, in the court’s view, the case of Borough of Neptune City v. Borough of Avon-By-The-Sea (114 N. J. Super. 115) lends support to the conclusion that a municipality may not totally exclude nonresidents. The Borough of Avon-By-The-Sea (Avon) is a municipality which, like the City of Long Beach, borders the Atlantic Ocean. Also, like the City of Long Beach, Avon owns the beach and boardwalk. Avon was empowered by statute to control its beach and boardwalk facilities and to charge reasonable fees for the use thereof. Acting pursuant to such power, Avon adopted a schedule of charges which fixed the fee for a season badge at $10 and the fee for a monthly badge at $10. However, the ordinance provided that season badges could only be purchased by residents or taxpayers of Avon and the members of their immediate families. The effect of the ordinance was that residents and taxpayers of Avon could purchase a season badge for $10. All others had to purchase monthly badges at $10 a month or a cost of $20 for the two-month season.
The ordinance was challenged on the ground that it discriminated against the residents of Neptune City, a community adjacent to Avon. The court reviewed the history of open beaches on the North Jersey shore and the efforts of beachfront municipalities to limit congestion by regulating use of the beach facilities and by charging fees. It then addressed itself to the question of whether fees must be applied equally to all persons. *779 The court noted the need for jetties and groins to retard erosion; the efforts of Federal, State and local authorities to counter the effects of erosion; the tax burden on resident taxpayers to make up the difference between revenues and expenses for operation of the beachfront; the augmented municipal services required by the influx of people; and the sole responsibility of Avon for the maintenance and reconstruction of the boardwalk. After considering these factors the court upheld - the differential fee schedule stating (114 N. J. Super. 115, 123, supra): “ Avon, because of its fortuitous location, is charged with the responsibility of administering this natural resource for all our citizens. However, the court is of the opinion that Avon should not alone bear the disproportionate cost of the administration. After considering the equities on both sides the court finds that cogent and compelling justification exists for the establishment of a differential fee schedule based on residence. As long as the disparity is reasonable and bears a rational relationship to the expenses of operation the law is not offended.” It is clear from the opinion in Borough of Neptune City that the beach facilities of Avon were open to the public at large and that the court did not regard the municipality as , having power to restrict this use solely to residents of Avon. " However, because of the burden which fell locally on the municipality in maintaining and operating its beach facilities for the benefit of the public at large, a differential fee schedule based on residence was justified.
Genuine support for the exclusionary policy adopted by the city is not found in the case of Campbell v. Town of Hamburg (156 Misc. 134). In that case dedication of a small public park came about as the result of a conveyance of the property in question by a private owner to the town by a deed which con- ' tained subsequent, restrictive covenants running with the land and which specifically required that the premises should be maintained and used by the Town of Hamburg in perpetuity as a park for the use and benefit of the citizens and residents of that township. The true basis for restricting use of the park in that case to the inhabitants of the town is found in the terms of the deed of dedication itself and the acceptance of the deed, in the form tendered, obligated the town to restrict the use of the park to those persons specified by the grantor. Consequently, the language in the opinion to the effect that any municipality has a basic property right to prevent the usurpation by strangers of that which the municipality has created and is maintaining for its own citizens and residents, is certainly *780 broader than the requirements of the decision. It is observed no citation of authority for the stated principle is contained in the opinion.
The case of Matter of Schreiber v. City of Rye (53 Misc 2d 259) is not regarded as a controlling authority on the question of the city’s right to limit the use of its public park to residents. In Schreiber a municipal swimming pool and golf course were involved. So far as appears from the opinion; the swimming pool and golf course were, from their inception, designed and created to serve only the inhabitants of the muiiicipality. Furthermore, it appears that at no time had the public at large ever used these facilities. In these -circumstances it could hardly be found that these municipal facilities had been dedicated for public use by the public at large. Therefore, there is nothing inconsistent between the holding in Schreiber and the principle that a public park dedicated to use of the public at large may not be restricted to the inhabitants of a single locality.
The court recognizes that there are decisions in other States which seem to support the proposition that a municipality may alienate or change the use of land used for a public park if it acquired the land free of any limitations or restrictions on its use. A number of such decisions were discussed in Rayor v. City of Cheyenne (63 Wyo. 72, supra) where it was noted that upon analysis special legislative authority had been given either to change the use or to alienate the property. (See Rayor v. City of Cheyenne, supra, pp. 81-82.) Similarly, in O’Rourke v. City of Homewood (286 Ala. 99) alienability of certain land was upheld but the court found no dedication to park purposes. The case of City of Marysville v. Royd (181 Cal. App. 2d 755) is not so easy to distinguish. However, it seems probable that the special nature of the city’s charter and the powers therein contained were determinative. In Paepcke v. Public Rldg. Comm. of Chicago (46 Ill. 2d 330) the court found that the change in use of park lands had been authorized by the Illinois Legislature. In Carlson v. City of Fremont (180 Neb. 262) it appeared that title was acquired by patents made by the Federal Government which made no reference to park use and that the land was not exclusively dedicated to use as a park.
Having found that there has been a completed dedication of the Ocean Beach Park to the use of the public at large and that such dedication is irrevocable the court finds that it was beyond the governmental power of the Council of the City of Long Beach to restrict the use of the beach forming part of the *781 Ocean Beach Park to residents of the city and their invited^ guests without specific legislative authorization. Accordingly, the plaintiffs are entitled to judgment declaring that Local Law No. 9 of the Local Laws of 1970, to the extent that it purports to so restrict the use of the beach, is invalid.
The court has considered the other grounds which the plaintiffs have asserted as supporting their claim that the attempt to restrict use of the beach area is invalid. However, in view of the conclusion reached by the court for the reasons indicated, the court deems it unnecessary to make a determination in respect of such other grounds.
Motions upon which the court reserved decision at the trial are resolved in accordance with the foregoing memorandum which constitutes the decision of the court pursuant to CPLR 4213.