QUESTION: May a municipality charge a higher fee to nonresidents than residents for the use of municipally owned parks and other municipal recreational facilities?
SUMMARY: Although a municipality may charge a fee for individual use of a municipally owned park or other municipal recreational facility which is reasonably related to the expense incurred in operating and maintaining the park or facility, the municipality may not charge a higher fee to nonresidents than residents unless all relevant economic factors establish a rational foundation for such differentiation. As stated in AGO 075-84, a municipality may make all regulations with regard to the control and management of its public parks as are necessary to preserve the public peace and safety, to protect the property from injury, and to secure to the public the common enjoyment thereof. Moreover, as an aspect of this regulatory authority, it is generally recognized that a municipality may charge a fee for individual use which is reasonably related to the expense incurred in operating and maintaining a public park. 64 C.J.S. Municipal Corporations s. 1818, pp. 300-303; AGO 062-142 and authorities cited therein. As to whether a municipality may charge a higher fee to nonresidents than residents for the use of a municipally owned park or other municipal recreational facility, any legislative classification, including a legislative distinction based on residency, to survive a constitutional challenge must be found to comply with the mandates of the Equal Protection Clause of theFourteenth Amendment of the United States Constitution. See also the Privileges and Immunities Clause, 14th Amend., and the Interstate Commerce Clause, s. 8, Art. I, cl. 3, U.S. Const. And, since such determination of compliance depends upon the peculiar facts existent in each particular situation, your question is not susceptible of a specific affirmative or negative response but is ultimately one for judicial resolution within the context of a proper case and controversy. However, the following general comments may be made. The United States Supreme Court has developed a so-called "twotiered" approach to equal protection, one known as the "strict scrutiny" or the "compelling state interest" test, and the other known as the "minimal scrutiny" or "rational relationship" test. The strict scrutiny test is applied when rights properly classified as "fundamental," such as the right to travel, the right to vote, and the right to essential facilities for prosecution of a criminal appeal, are involved, or when the classification is predicated upon certain "suspect" classifications, such as race, alienage, and national origin. On the other hand, if neither a fundamental right nor a suspect classification is involved, the statute or regulation is presumptively valid and will not be disturbed unless without a reasonable relation to a valid state purpose. See Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Har. L. Rev. 1 (1972), in which the author discusses the court's apparent discontent with the two-tiered system of judicial review and the possible development of a new, hybrid equal protection standard. As to which of the equal protection tests is applicable to the instant inquiry, I am aware of no case holding that residency per se is a suspect classification. Nor am I aware of any case directly holding that use of public parks for recreational purposes involves a fundamental right. But see Access to Public Municipal Beaches: The Formulation of a Comprehensive Legal Approach, 7 Suffolk Univ. L. Rev. 936, 966-969 (1973), in which the author asserts that the right of access to shoreline recreation resources should be considered a fundamental right. Thus, the minimal scrutiny or rational relationship test appears applicable here. This test requires that a rational foundation for a distinction between residents and nonresidents be shown in order to sustain such a classification. Cf. Toomer v. Witsell, 334 U.S. 385 (1948), establishing a similar test under the Privileges and Immunities Clause of the Fourteenth Amendment; AGO 074-279. Undoubtedly, the argument most often asserted by municipalities to justify the imposition of a higher fee upon nonresidents than residents for use of municipally owned parks and other municipal recreational facilities will be that tax moneys derived from residents support the park or recreational facility, and that if the user fee treated residents and nonresidents equally, the result would be a reverse discrimination against residents. See Toomer v. Witsell, supra, at 399; Borough of Neptune City v. Borough of Avonby-the-Sea,294 A.2d 47 (N.J. 1972); Gewirtz v. City of Long Beach, 69 Misc.2d 763, 330 N.Y.S.2d 495 (S.Ct. 1972); and Non-Residency Restrictions in Municipally Owned Beaches: Approaches to the Problem, 10 Colum. J. of Law Soc. Prob. 177, 187-191 (1974). However, in making its determination as to whether such tax allocations justify a distinction between residents and nonresidents, a municipal governing body should also consider the amount of federal and state money that has supported the construction and maintenance of the park or recreational facility in question and the general economic benefit accruing to the municipality by reason of the influx of persons to use the park or recreational facility. In other words, a court, when presented with the issue, is likely to require that a municipality which has made such a resident-nonresident distinction show that the differential in user fees reflects, and is substantially related to, all economic factors, not simply related to the quantum of tax dollars spent by residents, and that a definite financial burden on the municipality in park maintenance costs clearly justifies a higher fee for nonresidents. See Public Access to Beaches: Common Law Doctrines and Constitutional Challenges, 48 N.Y.U. L. Rev. 369, 383, 390-393 (1973), in which the author argues that the Equal Protection Clause requires that in accomplishing a legitimate governmental purpose, the state and its agencies and subdivisions must employ the means resulting in the least classification. In light of the obvious difficulties in establishing the proposition that a higher fee for nonresidents than residents for the use of municipally owned park or other municipal recreational facility is justified because of municipal tax allocations, it is suggested that, instead of establishing a fee schedule which differentiates on the basis of residency, a municipality may wish to consider removing the maintenance and operation expense of such park or facility from the municipality's general budget and financing the park or facility entirely from fees charged equally to all park or facility users. In addition to being "less onerous" in an equal protection sense, this approach would be more consistent with the accepted notion that public parks are held not for the sole use of a particular community, but for the use of the general public without reference to the residence of the user. See 24 Fla. Jur. Parks and Recreation Centers s. 6, p. 175; 10 McQuillin Municipal Corporations s. 28.52, p. 169; cf. AGO's 075-84, 074-279, and 062-142.