■ In the Matter of 10 EAST REALTY, LLC, et al., Appellants, v INCORPORATED VILLAGE OF VALLEY STREAM et al., Respondents. [854 NYS2d 461]—

The respondent 1 E. Lincoln Realty Corp. (hereinafter Lincoln Realty) entered into a contract with the respondent Incorporated Village of Valley Stream pursuant to which Lincoln Realty would purchase from the Village a parcel of property which had been used as a municipal parking lot for approximately 50 years. The contract of sale provided that the transaction was contingent upon Lincoln Realty closing title on its purchase of an adjoining property upon which it intended to construct an office building, and the parties to the contract contemplated that Lincoln Realty would use the parking lot property as a private parking area for occupants of the office building, and possibly for an expansion of the office building in the future. The contract provided that, in order to finance Lincoln Realty's purchase of the parking lot, the Village would take back a purchase-money mortgage, pursuant to which Lincoln Realty would make no down payment and would pay the $275,000 purchase price over 15 years, at an interest rate of 5% per annum. The Village's Board of Trustees (hereinafter the Village Board) agreed to the transaction because its members believed that "the construction of a modern office building at that part of the retail commercial district was absolutely necessary to the future enhancement of the Village business district." On December 9, 2002 the Village Board is-

sued a determination authorizing the Village to close on the sale of the parking lot and to enter into a purchase-money mortgage with Lincoln Realty.

The owner of another adjacent parcel of land and the members of a Valley Stream civic association (hereinafter, collectively, the petitioners) commenced this CPLR article 78 proceeding, challenging the Village's sale of the parking lot to a private entity, including the provision taking back a purchase-money mortgage. The petition asserted, inter alia, that the subject parking lot was impressed with a public trust, and therefore could not be sold by the Village for private use without specific authorization from the State Legislature, and that taking back the purchase-money mortgage constituted an unconstitutional loan by a municipality to a private entity. In the judgment appealed from, the Supreme Court, having found the petitioners' contentions to be without merit, denied the petition and, in effect, dismissed the proceeding.

The public trust doctrine restricts the alienation of property owned by a municipality which has been dedicated for use as a public park or recreational area (*see Matter of Angiolillo v Town of Greenburgh,* 290 AD2d 1 [2001]; *Kenny v Board of Trustees of Inc. Vil. of Garden City,* 289 AD2d 534 [2001]; *Gewirtz v City of Long Beach,* 69 Misc 2d 763 [1972], *affd* 45 AD2d 841 [1974]). Under this common-law principle, natural resources, recreational areas, and parkland are held in trust for the general public, and may not be sold or leased by a municipality without the specific approval of the State Legislature (*see Brooklyn Park Commrs. v Armstrong,* 45 NY 234, 243 [1871]; *Matter of Angiolillo v Town of Greenburgh,* 290 AD2d at 10; *Gewirtz v City of Long Beach,* 69 Misc 2d at 777).

Municipal parking may constitute a "public use" of property (*see Matter of 10 E. Realty, LLC v Incorporated Vil. of Val. Stream,* 17 AD3d 472, 474 [2005]), and the petitioners may have been able to establish that the Village was not entirely free to sell or lease the subject parking lot had they shown that the property was dedicated for public use through "express provisions in a deed or legislative enactment" (*Matter of Angiolillo v Town of Greenburgh,* 290 AD2d at 10-11; *see e.g. Matter of Lake George Steamboat Co. v Blais,* 30 NY2d 48, 50-51 [1972] [instruments conveying lakefront property from State of New York to village restricted use of parcels to "public park purposes," "dock facilities for the benefit of the Village," and "public boat rental and boat transportation facilities"]; *People ex rel. Swan v Doxsee,* 136 App Div 400, 401 [1910], *affd* 198 NY 605 [1910] [act of State Legislature authorized town to purchase and build

docks "for public use"]). The petitioners, however, submitted no evidence demonstrating that any such dedication had occurred, and thus failed to carry their burden of proof on this issue (*see Matter of Angiolillo v Town of Greenburgh,* 290 AD2d at 11). While a parcel's continuous use as a public park or recreational area may impress that parcel with a public trust by implication (*see Matter of Angiolillo v Town of Greenburgh,* 290 AD2d at 10-11; *Kenny v Board of Trustees of Inc. Vil. of Garden City,* 289 AD2d at 534-535; *Gewirtz v City of Long Beach,* 69 Misc 2d at 771, 774-775), the petitioners have cited no authority for the proposition that a parking lot may achieve public trust status through such means.

Furthermore, although it has been stated in dicta that land acquired by a village for use as a municipal parking facility "must be held by the village in trust for that purpose, the same as land acquired for a highway must be held for that purpose" (*Ambassador Mgt. Corp. v Incorporated Vil. of Hempstead,* 186 Misc 74, 77 [1945], *affd* 270 App Div 898 [1946]), the State Legislature, in a subsequent enactment, authorized the sale of village property generally (*see* Village Law § 1-102 [1] [eff Sept. 1, 1973]), just as it has authorized the sale of property acquired for, but no longer needed for, highway purposes (*see Matter of Angiolillo v Town of Greenburgh,* 290 AD2d at 11-12). Village Law § 1-102 (1) empowers villages to "take, purchase, hold, lease, sell and convey such real and personal property as the purposes of the [municipal] corporation may require." Although such a general statutory provision may be overridden by the public trust doctrine (*see Gewirtz v City of Long Beach,* 69 Misc 2d at 776), the petitioners have cited no authority for the proposition that a village's power to dispose of surplus property under Village Law § 1-102 (1) is constrained by the public trust doctrine where the property in question is not used for park or recreational purposes.

Thus, the public trust doctrine did not preclude the Village's sale of the subject parking lot to Lincoln Realty.

We now turn to the issue of whether it was permissible for the Village to take back a purchase-money mortgage in connection with the sale of the parking lot. The Gift or Loan Clause of the New York Constitution provides, in pertinent part, that: "No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking, or become directly or indirectly the owner of stock in, or bonds of, any private corporation or association; nor shall any county, city, town, village or school district give or loan its credit to or

in aid of any individual, or public or private corporation or association, or private undertaking" (NY Const, art VIII, § 1). Originally enacted in 1874, this provision was designed to address the practices of certain railroad companies, which procured bonds from municipalities in exchange for shares of the companies' stock, and often failed to build the promised railways through the municipalities (*see Sun Print. & Publ. Assn. v Mayor of City of N.Y.,* 152 NY 257, 268-269 [1897]).

Contrary to the respondents' contention, the purchase-money mortgage they entered into in this case cannot reasonably be viewed as anything other than a "loan." The respondents' financing arrangement clearly bears the indicia of what is commonly understood to constitute a loan, such as the provision for the payment of interest and the Village's security interest in the property, which presumably would permit foreclosure upon a default by Lincoln Realty.

In determining that the purchase-money mortgage did not violate the Gift or Loan Clause, the Supreme Court relied on a 1935 decision of the Nassau County Court which upheld a purchase-money mortgage given to the Town of Hempstead by an individual who purchased a parcel of land from the town (*see Cook v Burtis,* 157 Misc 140 [1935]). In *Cook,* the mortgage given to the town had been reduced from $8,100 to $3,400 when the purchaser defaulted, and the town commenced a foreclosure action. The receiver of the judgment creditor argued that the purchase-money mortgage given to the town was invalid under the Gift or Loan Clause. The *Cook* court reasoned that: "If the [creditor's] contention were upheld, then the town could not recover on its security and the effect of such provision would be an outright gift of such moneys to the mortgagor. But such gift is absolutely prohibited by the Constitution . . . . It is my opinion that the defendant's contention must fall for two reasons. In the first instance the constitutional amendment was designed to protect various municipalities and was not enacted for the purpose of depriving them of their lawful property . . . In the second place, it would appear that the amendment was specifically designed to protect the people from an unwarranted diversion of municipal funds for investment in private enterprise. At that time a railway mania was sweeping the country and many municipalities were prepared to mortgage themselves to the hilt in order to secure the advantages of modern transportation. This provision was inserted for the purpose of protecting the various political subdivisions from the possibly disastrous result of unbridled enthusiasm. It had nothing to do with town lands or funds which are derived from the sale of such lands" (*Cook v Burtis,* 157 Misc at 141-142).

It appears to us that the *Cook* case was incorrectly decided. The fact that the Gift or Loan Clause was meant to "protect" municipalities does not mean that a particular financing arrangement should be upheld simply because it benefits a municipality and its citizens. While a municipality's governing body is generally empowered to take actions, including the sale of real property, which it finds to be in the best interests of its citizens (*see* Village Law § 1-102 [1]), the Constitution limits the methods by which the municipality's objectives may be achieved. Moreover, although the particular conduct that inspired the enactment of the Gift or Loan Clause was the "unwarranted diversion of municipal funds" to certain private entities as a result of "railway mania," the provision is not limited to investment in railroad companies. Rather, the language of that provision is quite broad, and it plainly prohibits *any* loan by a municipality to a private entity.

The Supreme Court in this case also relied on a 1987 opinion issued by the office of the State Comptroller, concluding that it was constitutionally permissible for a municipality to take back a purchase-money mortgage (*see* 1987 Ops St Comp No. 87-51; *see also* 1981 Ops St Comp No. 81-61; 33 Ops St Comp No. 77-272, at 53 [1977]). That opinion flatly contradicted opinions issued by the State Comptroller in 1956 and 1967, which concluded that the Gift or Loan Clause prohibited a town from taking back a purchase-money mortgage in connection with its sale of real property (*see* 23 Ops St Comp No. 67-904, at 804, 807 [1967]; 12 Ops St Comp No. 8100, at 185 [1956]), and the Comptroller's office did not identify any reason for deviating from its original position. It appears to us that the opinions issued by the State Comptroller in 1956 and 1967 are correct, while the opinions issued in 1977, 1981, and 1987 are inconsistent with the plain meaning of the Gift or Loan Clause.

The Supreme Court reasoned that it is permissible for a municipality to take back a purchase-money mortgage, despite the Gift or Loan Clause, since the Legislature, in Education Law § 402 (3) and in "numerous special acts," has authorized municipalities and school districts to take back purchase-money mortgages, and "all acts of the Legislature carry with them a strong presumption of constitutionality" (1987 Ops St Comp No. 87-51). Although legislative acts are presumed to be constitutional, the mere enactment of a statute is no substitute for judicial review of its constitutionality, especially where there is no indication that the Legislature devoted any attention to the issue of whether the statutes in question were consistent with the Gift or Loan Clause. In its 1987 opinion, the State

Comptroller conceded that the Constitution, "on its face, would appear to preclude" a municipality from taking back a purchase-money mortgage, yet failed to explain why that appearance is incorrect. Unexplained legislative acts cannot alter the obvious meaning of the Gift or Loan Clause. Where the language of a statutory or constitutional provision "is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669, 675 [1988] [internal quotation marks omitted]; *see Matter of Overton v Town of Southampton,* 273 AD2d 242, 244 [2000]).

Thus, the financing arrangement between the Village and Lincoln Realty constituted a loan by a municipality to a private entity, and therefore was impermissible under the Gift or Loan Clause. Accordingly, that branch of the petition which was to annul so much of the December 9, 2002, determination as authorized the Village to take back a purchase-money mortgage in connection with its sale of the subject parking lot should have been granted.

The petitioners' remaining contentions are not properly before this Court, and the respondents' remaining contentions are without merit. Prudenti, P.J., Spolzino, Fisher and Dillon, JJ., concur.