A. Franklin Mahoney, J.
This is an application for a temporary injunction restraining the defendants from paying out or collecting moneys of the City of Troy for purchase of garbage equipment. The matter has been brought before this court by an order requiring the defendants to show cause why the injunction should not be granted. The underlying action giving rise to this application is a taxpayers’ action challenging the purchase of garbage disposal equipment in alleged violation of the *580 City Charter of Troy. The burden of plaintiffs’ contention is that the Charter requires competitive bidding on all purchases in excess of $1,000, and such bidding was dispensed with by ordinance of the City Council of Troy.
The applicable law is confined to the City Charter for the City of Troy, New York, effective January 1, 1964, and the General Municipal Law of the State of New York. Section 5.64 of the Charter provides as follows: ‘ ‘ Competition on Purchases and Sales. Purchases in excess of one thousand dollars, except purchases of real estate, shall be by contract to the lowest responsible bidder and all sales in excess of five hundred dollars, except sales of real property, shall be to the highest bidder, in both cases after public notice of the proposed purchases or sales and the receipts of sealed bids therefor unless the city council, by ordinance, determines that it is impossible or impractical to purchase or to sell in such manner. ’ ’
On May 12,1969, the City Council of the City of Troy approved an ordinance providing as follows:
“ The City of Troy in City Council Convened Ordains as follows:
‘ ‘ 1. That pursuant to § 564 of the City Charter of the City of Troy, it is hereby determined that it is impossible and impractical to purchase garbage disposal equipment after receipt of public bids therefore since the time in which to accomplish public bidding would exceed the time required to acquire necessary equipment with which to collect and dispose of garbage upon expiration of contractural agreements therefore.
“ 2. That the purchasing agent is hereby authorized to purchase equipment of the type described on the annexed exhibit at the best price and under the most advantageous circumstances for the City of Troy.
“ This ordinance is to take effect immediately.”
It appears from the papers presented upon this application that on May 12, 1969, the City Manager of Troy canceled an existing contract with a private garbage disposal company for collection of garbage in the City of Troy, such cancellation to become effective on May 17, 1969.
Section 12.12 of the City Charter provides as follows:1 ‘ Second Class Cities Law Superseded. Chapter 473 of the laws of 1906, known as the second class cities law, as amended generally by chapter 55 of the laws of 1909 and specifically by other statutes, and as superseded from time to time by various local laws adopted by the common council of the city of Troy, is hereby superseded in its entirety in so far as it applies to the city of Troy.”
*581 However, section 103 of the General Municipal Law of the State of New York provides in part: “ Except as otherwise expressly provided by an act of the legislature or by a local law adopted prior to September first, nineteen hundred fifty-three, all contracts for public work involving an expenditure of more than twenty-five hundred dollars and all purchase contracts involving an expenditure of more than one thousand dollars, shall be awarded by the appropriate officer, board or agency of a political subdivision or of any district therein including but not limited to a soil conservation district, to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section.”
Subdivision 2 of this section outlines the procedure for competitive bidding. The General Municipal Law applies generally to all municipal corporations, including counties, cities, towns and villages and in addition covers other political subdivisions. As appears from section 103, the requirements for competitive bidding must be enforced, absent an act of the Legislature or a local law adopted prior to September 1, 1953. The City Charter of Troy was approved on November 3, 1959; therefore, the General Municipal Law must govern.
Subdivision 4 of section 103 provides: “ Notwithstanding the provisions of subdivision one of this section, in the case of a public emergency arising out of an accident or other unforeseen occurrence or condition whereby circumstances affecting public buildings, public property or the life, health, safety or property of the inhabitants of a political subdivision or district therein, require immediate action which cannot await competitive bidding, contracts for public work or the purchase of supplies, material or equipment may be let by the appropriate officer, board or agency of a political subdivision or district therein.”
Nowhere in the papers before the court is there a specific reference to a public emergency. We must then turn back to the City Charter for its requirements. Section 3.14 provides as follows: ‘ ‘ Public Emergencies. In the case of any public emergency such as conflagration, riot, storm, earthquake or other unusual peril to the lives or properties of the citizens of Troy, it shall be the duty of the city manager to declare such public emergency and to summon all the forces of the city for the purpose of taking all possible protective measures. The manager shall also have power to summon deputize and otherwise employ such other persons as he may deem necessary in such protective measures. Any expense incurred under the provisions of this section shall be proper charges against the city.”
*582 A municipality has the power to determine for itself what actions are necessary to promote the public welfare and the courts will not interfere with this legislative privilege except in rare instances. It is not within the province of a court to pass upon the wisdom of a statute conferring powers upon a municipality or other public body or the wisdom of the municipality in exercising the powers conferred. The courts do not sit in judgment upon questions of legislative policy or administrative discretion. It is only where a municipality’s contemplated actions are clearly without warrant of law that a court may interfere. Where the law or charter confers upon the City Council power to determine the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts and in such case the decision of the proper corporate body is, in the absence of fraud, final and conclusive unless that body transcends its powers. The court is without power to control or direct legislative action of the City Council and its action will be annulled only when exceptional circumstances are shown. It is not a court’s duty or responsibility to determine the efficiency of a city government and, when called to pass on local legislation, it cannot declare an act invalid for that reason, since it is the people’s representatives in the City Council, and not the court, who have the responsibility of enacting legislation for the government of the city. The City Council is justified in guarding against any evil which may be fairly anticipated and it has wide discretion in deciding what means are to be used, and unless the means used to correct the evil are unduly oppressive and confiscatory, the court will not interfere.
The court is constrained to adopt a course which must give first consideration to the citizens of Troy. Section 103 of the General Municipal Law, which governs the city’s conduct, provides in subdivision 4 for emergency situations. An ‘ ‘ unforeseen ” occurrence or condition is one which is not anticipated, which creates a situation which cannot be remedied by the exercise of reasonable care or which is fortuitous. (Rodin v. Director of Purchasing of Town of Hempstead, 38 Misc 2d 362.) Subdivision 4 provides an exception to bidding requirements where circumstances affecting the life, health or safety of the citizens of Troy require immediate action but situations of this kind must be such as cannot reasonably be foreseen in time to advertise for bids. The court does not at this juncture pass upon or consider the merits of the underlying action herein, for it may well develop upon a trial that the allegations of the com *583 plaint charging fraud, conspiracy or other wrongdoing may be established. However, argument of the motion before the Court has indicated that garbage collections in the City of Troy were not made on April 8, 9 and 10 of 1969; that the New York State Department of Health ordered the City of Troy to remove the garbage and that the City Manager entered into a purported 30-day contract with a private contractor. The timeliness or lack thereof of the acts of the City Manager subsequent to such actions are not relevant to the inquiry here but must await the trial of the underlying action. The court must make its determination here on the applicable law. This court finds that the acts and conduct of the City Manager in effect were tantamount to a declaration of an emergency in accordance with his duties as set forth in section 3.14 of the City Charter. An emergency affecting public health did exist, and the court should not interfere with the legislative process by issuance of a temporary restraining order, pending determination of the underlying action. Accordingly, the application for a temporary injunction is denied.