Russell W. Williams, Individually and as County Legislator of the 17th Legislative District, et al., Appellants, v William Bryant, Individually and as County Executive of the County of Oneida, et al., Respondents.

Fourth Department, July 12, 1976

*Kenneth P. Ray (Anthony LaFache* of counsel), for appellants.

*Donald E. Keinz, County Attorney (Rocco Mascaro* of counsel), for William Bryant and others, respondents.

*Evans Severn, Bankert & Peet (Robert Lutz* of counsel), for New York Telephone Company, respondent.

MAHONEY, J. Respondent County Executive by and through respondent county department heads in the fall of 1974 determined to replace an existing telephone switchboard system servicing a county-maintained hospital with a direct dialing Centrex system to be added to and connected with an installed Centrex system servicing the county office building. The installation cost of the hospital Centrex system is approximately $1,300 with a monthly service charge of $937.77. The current monthly service rate for the telephone switchboard system to be replaced is $1,045.77. Prior to commencement of the installation work scheduled for January 28, 1975, by resolution No. 434 duly adopted December 11, 1974 the Oneida Board of County Legislators "reinstated" the switchboard telephone system at the hospital and created two telephone operator positions for said facility. Petitioners thereafter commenced this CPLR article 78 proceeding to prohibit respondents from proceeding with the proposed installation of the Centrex system, alleging that respondent officers lacked the authority to contract for the subject installation; the agreement with respondent telephone company to install the system violated the competitive bidding requirements of section 103 of the General Municipal Law, subdivision (c) of section 306 of the Oneida County Administrative Code (Local Laws, 1962, No. 5 of County of Oneida); the installation of the Centrex system was in violation of resolution No. 434; and that the installation of the system would cause irreparable harm and injury to the public and patients at the hospital.

Special Term's dismissal of the petition on the merits and judgment entered thereon was in all respects proper. The

Oneida County Charter and Oneida County Administrative Code provide in essentially identical language that the Commissioner of Public Works shall have charge and supervision of maintenance, repair and alterations of buildings owned or leased by the county (Oneida County Charter, § 702, subd [c] [Local Laws, 1961, No. 3 of County of Oneida]; Oneida County Administrative Code, § 702, subd [c]). The code further provides that such duties will be exercised by the Deputy Commissioner of Public Works of the Division of Buildings and Grounds (Code, § 705, subd [a], par [1]). The charter and code also provide that the head of the Purchase Division in the County Executive Office shall execute all contracts on behalf of the county, with exceptions not here relevant, relative to buying or leasing of supplies, materials, equipment and services (Charter, § 306; Code, § 306, subd [b], par [7]). Clearly, then, the respondent county administrators had the power to contract for the installation of the subject Centrex telephone system, it being a maintenance component of a county building.

As for petitioners' contention that such contractual power was limited by virtue of the County Legislature's adoption of resolution No. 434, it is to be borne in mind that both the charter and the code provide that the County Adminstrative Code may only be amended by local law (Charter, § 202, subd [c]; Code, § 202, subd [c]); and that a local law, by definition, does not include a resolution (Municipal Home Rule, § 2, subd 9; Charter, § 203; Code, § 203). Thus, any resolution passed by the County Legislature would be ineffective in circumscribing a power bestowed by the charter and the code upon a county administrator.

While it is the law in New York that when a municipality contracts with a public utility type monopoly, it need not comply with the procedures dictated by a competitive bidding statute (*Harlem Gas-Light Co. v City of New York,* 33 NY 309, 324-325; see, also, *People v City of Schenectady,* 186 Misc 385, 392), such proposition is not here dispositive in view of the evidence presented that respondent telephone company did have competition with regard to the installation of Centrex system equipment.

Addressing our attention, therefore, to the statutory competitive bidding requirements as they may affect the subject installation, we note that the code provides that the board of legislators shall fix a sum not to exceed $1,000 as a limit

above which any contract must be advertised for sealed bids (Code, § 306, subd [c]). However, subdivision 1 of section 103 of the General Municipal Law provides for a threshold of $3,500 for public work contracts and $1,500 for purchase contracts before public bidding is required. The obvious conflict between the State and municipal statutorily prescribed threshold figures is readily resolved by the self-contained provision of subdivison 1 of section 103 of the General Municipal Law wherein applicability is extended "[e]xcept as otherwise expressly provided * * * by a local law adopted prior to September first, nineteen hundred fifty-three". Inasmuch as the Oneida County Charter was not adopted until 1961 and the code a year later, the provisions of the General Municipal Law must govern *(Grimm v City of Troy,* 60 Misc 2d 579, 581; 10 Opn St Comp, 1954, pp 323, 324).

Whether the proposed installation of the Centrex system be characterized as a "public work" or "purchase" contract, the $1,300 charge therefor is well below either threshold figure prescribed by subdivison 1 of section 103 of the General Municipal Law, exempting the transaction from the competitive bidding requirements. Nor, in determining such threshold contractual commitment figure, is the proposed monthly service charge of $937.77 properly includable with the installation charge of $1,300. Such monthly service charge is made by the respondent telephone company for the use of its lines and facilities as a regulated monopoly and it is, therefore, immune from the operation of the competitive bidding statute *(Harlem Gas-Light Co. v City of New York, supra).*

Finally, there is no merit to petitioners' allegation of irreparable harm either to the public or patients of the hospital ensuing from the proposed telephone system conversion here contemplated.

The judgment should be affirmed.

MARSH, P. J., SIMONS, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously affirmed without costs.