OPINION OF THE COURT
Walter B. Tolub, J.
Motions under sequence Nos. 001 and 002 are consolidated for disposition. Petitioner/plaintiff, Seabury Construction Corp. (Seabury), commenced this CPLR article 78 proceeding (motion sequence No. 001) against the Department of Environmental Protection of the City of New York (DEP), Albert Appleton, Department of Business Services of the City of New York (DBS), Wallace Ford, III, David N. Dinkins, in his capacity as the Mayor of the City of New York, Michael C. Rogers (Rogers), in his capacity as Chief Procurement Officer of the City of New York (collectively referred to as respondents), Halcyon Construction Corp./Hirani Contracting Corp. J.V. (Halcyon) and Biltwel General Contracting Corp./Haider Consulting J.V. (Biltwel) seeking an annulment of respondent Rogers’ determination to award the contracts for DEP Projects R-56 and NR-5 to Halcyon, and DEP Project 26W-65 to Biltwel (the three DEP contracts collectively referred to as DEP Projects) on the ground that the determination is an abuse of discretion, and contrary to law.
In addition to the CPLR article 78 relief sought, Seabury seeks the following relief: (1) a declaratory judgment that 11 RCNY 3-09 violates section 103 of the General Municipal Law, and that it was adopted without legislative authorization; (2) a permanent injunction enjoining implementation of 11 RCNY § 3-09; and (3) a writ of mandamus directing respondents to award the DEP Projects to Seabury. This court, in the exercise of its discretion, converts this proceeding into a hybrid CPLR article 78 proceeding and action for a declaratory judgment and for a permanent injunction (Matter of Pokoik v Department of Health Servs., 185 AD2d 929, 932).
In motion sequence No. 002, Seabury moves, pursuant to CPLR 408, for an order permitting limited disclosure of Halcyon and Biltwel with respect to Halcyon’s and Biltwel’s entitlement to participate in the program implemented under 11 RCNY 3-09.
At the outset, this court will address respondents’ application to lift the temporary restraining order (TRO) granted by Justice Angelo Graci of the Supreme Court, Queens County. *89 Seabury had commenced this hybrid proceeding in Supreme Court, Queens County. The order to show cause issued by Justice Graci on July 16, 1993 contained a TRO which restrained respondents from "awarding or taking any measures or actions to enter into, execute, consummate, implement or perform the contracts” for the DEP Projects to or with Halcyon and Biltwel, or any other person or entity other than the lowest responsible bidder concerning the DEP Projects. That same day respondents made an application to venue this hybrid proceeding in Supreme Court, New York County. On August 26, 1993, after hearing oral arguments on respondents’ application — which Seabury opposed — Justice Graci granted respondents’ motion and transferred the proceeding to Supreme Court, New York County. The record shows that this proceeding was filed with the County Clerk, New York County, on October 26, 1993.
At oral argument held on January 5, 1994 before this court, respondents made an application to lift the TRO which had been granted by Justice Graci. Respondents asserted that unless the DEP Projects are "allowed to go forth the water pollution removal and treatment process could be interrupted and cause an environmental hazard.” This court denied respondents’ application because the "urgency” and "immediacy” arguments raised were unconvincing in view of respondents’ motion to change venue, which delayed this proceeding for several months. Moreover, it does not appear that respondents exercised their right to seek to vacate the TRO pursuant to CPLR 5704 (a). Accordingly, for the same reasons, respondents’ application to vacate the TRO is denied.
The pertinent facts herein are as follows. On three separate occasions in early 1993, DEP issued invitations to bid on the DEP Projects, which involved various types of work on the City’s water purification facilities. Seabury, as a construction and contracting company that specializes in such work, submitted bids for the DEP Projects. Although it was the lowest responsible bidder for each of the DEP Projects, Seabury was not awarded the contracts. Instead, respondent Rogers advised Seabury that, pursuant 11 RCNY 3-09, a price preference program is provided to minority-owned and woman-owned business enterprises and qualified joint ventures in the procurement of public works contracts for the City. Respondent Rogers further advised Seabury that because Halcyon and Biltwel were certified as qualified joint ventures (see, 11 RCNY 2-02), and their bids were within the 10% "target percentage” *90 (see, 11 RCNY 3-09 [a]), he determined, pursuant to his authority under section 313 (b) of the New York City Charter, that it was in the best interest of the City to award the DEP Projects to Halcyon and Biltwel, even though they were not the lowest responsible bidders. In this proceeding, Seabury challenges respondent Rogers’ decision, made pursuant to New York City Charter § 313 (b) and 11 RCNY 3-09, to award the DEP Projects to other than the lowest responsible bidder.
ORIGINS OF 11 RCNY 3-09
In 1991, section 1304 was added to the New York City Charter, which required DBS to ensure meaningful participation of minority-owned and woman-owned business enterprises in the City’s procurement process, and authorized DBS to promulgate rules to implement this mandate. In 1992, pursuant to New York City Charter § 1304, DBS promulgated the minority-owned and woman-owned business enterprises Certification Rules and minority-owned and woman-owned business enterprises Program Rules in order to increase participation in City contracts by minority-owned and woman-owned business enterprises. These rules created a certification process, with specific criteria to determine eligibility for certification as a minority-owned business enterprise, woman-owned business enterprise or a qualified joint venture (see, 11 RCNY 2-02).
With regard to the minority-owned and woman-owned business enterprises price preference program, section 3-09 (a) provides, in relevant part, that: "In the case of contracts for goods, services or construction to be let by competitive sealed bidding, the agency may state in the invitation to bid that if the lowest responsible bid is submitted by a person who is not a certified firm and there is another bid within the 'target percentage’ of the bid offered by the lowest responsible bidder from either a person that is so certified or a qualified joint venturer * * * the agency shall refer such bid and the lowest responsible bid to the mayor, or such other official as may exercise such power pursuant to §310 of the New York City Charter, for a determination pursuant to subdivision b of §313 of such Charter of whether it is in the best interest of the City that the contract shall be awarded to other than the lowest responsible bidder. The 'target percentage’ shall be 10 percent unless the contracting agency determines [otherwise, in which case the reasons that a different percentage is appropriate for *91 a particular contract] shall be documented”. The remaining three subdivisions, not relevant to this proceeding, enumerate other aspects of the minority-owned and woman-owned business enterprises price preference program. Significantly, although authorized by New York City Charter § 1304, section 3-09’s language expressly contemplates adherence to the provisions set forth in New York City Charter § 313 (b) in implementing the minority-owned and woman-owned business enterprises price preference program.
In its challenge, Seabury alleges that 11 RCNY 3-09 and New York City Charter § 313 (b) violate General Municipal Law § 103. General Municipal Law § 103 (1) provides, in relevant part, that: "Except as otherwise expressly provided by an act of the legislature or by a local law adopted prior to September first, nineteen hundred fifty-three, all contracts for public work involving an expenditure of more than twenty thousand dollars * * * shall be awarded by the appropriate officer, board or agency of a political subdivision * * * to the lowest responsible bidder”. Although expressly mandating awards to the lowest responsible bidder, an exemption from the low bid rule is specifically provided for any act of the Legislature or local law adopted prior to September 1, 1953, which provides for procedures, other than competitive bidding, to award public works contracts.[1] Moreover, the State Comptroller has opined that the low bid requirement set forth in section 103 is not mandated even if a statute is adopted after September 1, 1953, provided that the statute is "essentially a mere revision, simplification, consolidation, codification or restatement of a pre-September 1, 1953 special law or local law” (1981 Opns St Comp No. 81-109, at 111).
Here, Seabury contends that because New York City Charter § 313 (b) was passed by the electorate in the general election held on November 7, 1989,[2] section 313 (b) constitutes a local law adopted after September 1, 1953, and therefore, the City is without authority to bypass the lowest responsible bidder, and must award the DEP Projects to the lowest responsible bidder, as mandated by General Municipal Law § 103. Correspondingly, Seabury argues because New York City Charter § 313 (b) is not exempt from General Municipal *92 Law § 103, 11 RCNY 3-09’s bypass provision is without legislative authority, and thus invalid.
Respondents assert, however, that the City’s power to award contracts to those other than the lowest responsible bidder, now embodied in New York City Charter § 313 (b), has its roots dating back to 1897. Therefore, respondents contend that the bypass authority contained in section 313 (b) is "simply a recodification, restatement and revision of pre-September 1, 1953 provisions” (see, 1981 Opns St Comp No. 81-109, at 111; see also, United States v City of New York, 799 F Supp 1308, affd 972 F2d 464). Under these circumstances, the City claims that 11 RCNY 3-09 and New York City Charter § 313 (b) are exempt from the low bid rule and the City may let contracts to those other than the lowest bidder if "it is in the best interest of the city” (see, NY Charter § 313 [b] [2]).
As noted by respondents, the City’s bypass authority dates back to 1897. Authority to bypass the lowest bidder first appeared in the Greater New York City Charter in 1897 (Old Charter) and was vested in the newly created Board of Public Improvements (see, L 1897, ch 378, § 419). The Board of Public Improvements was abolished in 1901, and replaced with the Board of Estimate and Apportionment, which assumed the bypass power (see, L 1901, ch 466, § 419). On November 7, 1989, New York City voters approved a revised Charter (New Charter) which, inter alia, abolished the Board of Estimate, and transferred its bypass power to the Mayor. Section 313 (b) (2) provides, in relevant part: "The agency letting the contract may reject all bids if it shall deem it for the interest of the city so to do; if not, it shall, without other consent or approval, award the contract to the lowest responsible bidder, unless the mayor shall determine in writing, justifying the reasons therefor, that it is in the best interest of the city that a bid other than that of the lowest responsible bidder shall be accepted.”
The question, therefore, in this proceeding is whether the transfer of power in section 313 (b) (2) of the New Charter from the Board of Estimate to the Mayor is "simply a recodification, restatement and revision of pre-September 1, 1953” bypass authority, which in turn would mean that the City is exempt from the competitive bidding requirement of General Municipal Law § 103 or is it a new statute violative of General Municipal Law § 103.
Put another way, is the transfer of the bypass authority from a quasi-legislative body, the Board of Estimate to the *93 executive Mayor such a new significant enactment, that the bypass authority no longer exists.
Two cases appear to have addressed this issue. In United States v City of New York (799 F Supp 1308, supra), a CPLR article 78 proceeding was brought challenging the process used by DEP in awarding three contracts for interim sludge management services on the ground that the contracts did not come within any exception permitting the City to circumvent competitive bidding requirements. In dismissing the petition, the District Court adopted the report and recommendation of the Magistrate. The Magistrate found that the "service” contract exception and the "special” case exception to competitive bidding in the Old Charter was incorporated in the New Charter because a close comparison of the Old and New Charter provisions showed that the two exceptions were based on the same principle, namely that under certain conditions where the municipality is required to exercise judgment and discretion competitive bidding is not mandated. Relying on the State Comptroller’s opinion (supra), the Magistrate found that the "service” contract exception and "special” case exception were "simply * * * recodification[s], restatements] and revision^] of pre-September 1, 1953 provisions” of the Old Charter, and in those cases the City may let contracts without going through the competitive bidding process (supra, at 1325-1326).
Significantly, the Magistrate did not address the core issue in this proceeding, namely whether the transfer of the bypass authority is something more than a "revision, simplification, consolidation, codification or restatement of a pre-September 1, 1953 special law or local law.” Accordingly, the court finds United States v City of New York (supra) inapposite.
In Matter of HHM Assocs. v Appleton (157 Misc 2d 759 [Sup Ct, NY County, Silbermann, J.]), petitioner challenged the "Joint Bidding Agreement” between the City and certain utility companies which required the City to integrate in one package the City’s own public works projects and the utilities’ work in order to reduce costs and delays in City projects. The "package” was to be awarded by competitive bidding. The petitioner argued that by including bid prices for private utility work with the price of public work, a situation could arise in which although the total cost of the public/private contract as a whole was a low bid, the cost for the public work aspect of the contract could be greater than that of the price of the public work aspect for the nonlow bids. Thus, petitioner *94 charged that this bidding process violated General Municipal Law § 103’s mandate to award contracts to the lowest responsible bidder.
The arguments raised by the parties in HHM Assocs. are substantially similar to those pressed in this action (supra, at 768-769). The court found that "[a] close comparison of the 1897, 1938 and current Charter provision * * * shows that they are based on the same principle: under certain conditions, the municipality is empowered to waive the 'lowest bidder’ rule” (supra, at 769). Although not so stating, the court essentially rejected the petitioner’s arguments and concluded that the City continued to possess the bypass power under the New Charter despite the transfer of the bypass authority from the Board of Estimate to the Mayor. The court also concluded that even though the decision to waive the rule is vested with the Mayor "the decision process is not free from scrutiny” (Matter of HHM Assocs. v Appleton, 157 Misc 2d, at 769). The City is still obligated to award a public works contract to the lowest responsible bidder through competitive bidding (supra, at 769-770). If a decision to waive the lowest responsible bidder rule is made, such a decision to be valid must be filed with the Procurement Policy Board and published in the City Record (supra, at 769-770; see, NY Charter § 313 [b] [2]). Because the City had not as of yet awarded the contract, and there was no evidence that the contract would be awarded to other than the lowest responsible bidder, the court denied the petition with leave to renew in the event that the City did award the contract to other than the lowest responsible bidder. Under these circumstances, that aspect of the court’s opinion dealing with the transfer of the bypass authority is dictum.
In view of the fact that neither United States v City of New York (supra), nor HHM Assocs. (supra) is dispositive of the issue pressed in this proceeding, this court must independently review the significance of the transfer of authority in resolving the instant dispute. A brief overview of the Board of Estimate is in order at this juncture. Before it was abolished in 1989, the Board of Estimate under the Old Charter was assigned comprehensive authority in the conduct of the City’s affairs (New York City Bd. of Estimate v Morris, 489 US 688, 694). The Board of Estimate was charged with the fiscal responsibility of calculating sewer and water rates, tax abatements, and property taxes (supra, at 694-695). In addition, the *95 Board of Estimate managed all City property, exercised plenary zoning authority, dispensed all franchises and leases on City property, fixed the salaries of those compensated by the City, and granted all City contracts (supra, at 695-696). Most significant was the Board of Estimate’s power to share legislative functions with the City Council with respect to modifying and approving the City’s budget (supra, at 696). Approval or modification of the budget required agreement between the City Council and the Board of Estimate with the Mayor taking no part in such deliberations (supra, at 696). The Board of Estimate did not share this comprehensive authority with any other party of the City’s government and exercised such authority through a voting scheme comprised of three Citywide elected officials, i.e., the Mayor, City Comptroller, City Council President, and the five borough presidents (supra, at 696). Each of the City-wide elected officials had two votes; each of the borough presidents had one vote (supra, at 694).
Turning to the issue raised in this proceeding, although the bypass authority continued in the New Charter is in theory the same as that contained in the Old Charter, the fact that the decision-making process with respect to such authority has been transferred from the Board of Estimate to the Mayor alone represents a significant departure from the balance of power originally provided for under the Old Charter. Contrary to respondents’ argument that the bypass authority exercised by the Mayor or the Mayor’s appointee is the same as the exercise of that power by the Board of Estimate, this shifting of the balance of authority significantly altered the manner in which the City conducts its business. Under the Old Charter, the bypass authority could only be triggered by a "super majority” vote of the Board of Estimate. On the other hand, the New Charter vests the power to implement the bypass authority in a single individual, namely the Mayor or the Mayor’s appointee. Under these circumstances, the transfer cannot be viewed as being a "mere revision, simplification, consolidation, codification or restatement” of section 343 (b) of the Old Charter simply because the subject matter alters the balance of power, rather than a continuation of a specific type of governmental power (see, United States v City of New York, 799 F Supp 1308, supra). Therefore, this court finds that section 313 (b) (2) of the New Charter is not a "revision, simplification, consolidation, codification or restatement” of section 343 (b) of the Old Charter, and is subject to the competitive bidding requirement of General Municipal Law *96 § 103 (Associated Bldrs. & Contrs. v City of Rochester, 67 NY2d 854, 856).
Accordingly, the application of petitioner is granted to the following extent: this court declares invalid 11 RCNY 3-09 on the ground that it violates section 103 of the General Municipal Law. In light of this declaration, this court annuls DEP’s award to Halcyon contracts for DEP Projects R-56 and NR-5, and to Biltwel contract for DEP Project 26W-65 on the ground that the determination to award these contracts to Halcyon and Biltwel violate General Municipal Law § 103. Because the court is without authority to direct respondents to award the DEP Projects to Seabury, the court remands the matter to DEP for further proceedings. In view of this determination, petitioner’s requests for injunctive relief and for limited disclosure (motion sequence No. 002) are deemed as moot.

. The purpose of this section requiring a city to award contracts to the lowest responsible bidder is to eliminate the opportunity for fraud, favoritism or corruption by officeholders (Matter of Signacon Controls v Mulroy, 32 NY2d 410, 415).

. Section 343 was also renumbered as section 313.