[645 NYS2d 111]

Georgе Imburgia, Appellant, v City of New Rochelle et al.,
Respondents.

Third Department, June 20, 1996

### APPEARANCES OF COUNSEL

*Michael Edward Plank,* New Rochelle, for appellant.

*Battle Fowler, L. L. P.,* New York City *(Raymond J. Soffientini* of counsel), for City of New Rochelle and others, respondents.

*McCullough, Goldberger & Staudt,* White Plains *(Charles A. Bradley* and *Patricia W. Gurahian* of counsel), for J. A. Valenti Contracting Corporation, respondent.

### OPINION OF THE COURT

CARDONA, P. J.

In 1993, defendant City of New Rochelle issued a request for proposals inviting private developers to propose a site and design for the construction of a new court and police facility. The City received a mandate from the State Office of Court Administration to improve its existing court facilities. Although the City initially considered rehabilitating the buildings, it was ultimately determined that they could not be renovated economically. The City received proposals from a number of developers including defendant J. A. Valenti Contracting Corporation (hereinafter Valenti). After reviewing all the proposals, Valenti's was found to be the most economically feasible. A review, pursuant to the State Environmental

Quality Review Act (ECL art 8), indicated that the site chosen by Valenti was the most appropriate. The City Council, in its capacity as lead agency for the project, issued a negative declaration of environmental significance and authorized the City to execute a purchase and sales agreement with Valenti. The agreement provided that the City would purchase the project on a "turnkey" basis, that is, Valenti would acquire title to the proposed site, build the project and, thereafter, sell the entire development to the City upon completion. Prior to signing the contract, Valenti secured an exclusive option to purchase the site, and upon execution of the contract Valenti did obtain title to the property.

Plaintiff commenced this action claiming that the contract was illegal and unenforceable for failing to comply with, *inter alia*, the applicable competitive bidding statutes (*see*, General Municipal Law §§ 101, 103) and the constitutional prohibition against a municipality lending its credit to a private party (*see*, NY Const, art VIII, § 1; *see also*, Local Finance Law § 101.00 [a] [1], [2]). Subsequent to the action's commencement, the City Council approved a resolution exempting the contract from competitive bidding based upon a provision in its City Charter. The City, along with the members of the City Council and defendant City Manager, moved to dismiss the complaint for failure to state a claim. Valenti separately moved for the same relief. Plaintiff cross-moved for, *inter alia*, summary judgment. After converting all motions, on consent, into summary judgment motions, Supreme Court granted defendants' motions, denied plaintiff's cross motion and dismissed the complaint. Plaintiff appeals.

■ We affirm. Turning first to the question of whether the City was required to engage in competitive bidding pursuant to General Municipal Law § 103, we find that the City was exempted from this requirement based on the provisions of its City Charter. It is true that General Municipal Law § 103 (1) mandates that all public work contracts costing more than $20,000 and all purchase contracts of more than $10,000 be awarded to the "lowest responsible bidder * * * after advertisement for sealed bids". The statute, however, expressly sets forth an exemption to this mandate for any local law adopted prior to September 1, 1953. In this case, it is undisputed that the section of the City Charter at issue was adopted prior to that date. In addition, the applicable section specifically provides that competitive bids may be waived by the City Council when "in the judgment of the city manager the subject

matter of a proposed contract is such that completion is impossible or impracticable" via the competitive bidding process (New Rochelle City Charter, art XIII, § 143 [A] [6]).

Here, before the City Council approved the resolution exempting the contract with Valenti from the competitive bidding requirements, the City Manager reported that, in her judgment, competitive bidding was impractical for a number of reasons. She noted that construction was required to be done on an expedited basis and a new facility rather than costly rehabilitation was necessary. Furthermore, she indicated that in the absence of appropriate City-owned land, construction on privately owned land was required. Also, the turnkey project required timely completion and a cost-effective fixed price which competitive bidding could not secure. She referred to expert reports which indicated that the site chosen by Valenti was the most appropriate and environmentally safe. Finally, she pointed out that Valenti would not transfer the site without being awarded the contract and condemnation of the site was too costly. These reasons were adopted by the City Council and incorporated into its resolution. Given these facts and the existence of the pre-1953 local law, we agree with Supreme Court's conclusion that the City properly exempted the contract with Valenti from the competitive bidding process (*cf., Williams v Bryant*, 53 AD2d 229, 232; *Matter of Seabury Constr. Corp. v Department of Envtl. Protection*, 160 Misc 2d 87, 92).

We find plaintiff's contention that the "impossible or impracticable" language in the City Charter should be construed as equivalent to the "emergency" language in General Municipal Law § 103 (4) without merit.* The impossible or impracticable exception in the City Charter permitted the City to exercise its discretion to evaluate competing proposals and obtain the most cost-effective and environmentally sound facility to satisfy its needs (*see generally, Pacificorp Capital v City of New York*, 741 F Supp 481 [local law "special case" exemption existed where the municipality demonstrated that, under the circumstances, it was impracticable or unsuitable to contract for work via competitive bids]; *see also, United States v City of New York*, 799 F Supp 1308, *affd* 972 F2d 464). There is nothing in the City Charter or existing case law requiring that the phrase be equated with a public emergency situation (*cf., Grimm v City of Troy*, 60 Misc 2d 579).

---

* General Municipal Law § 103 (4) exempts public emergency situations arising out of accidents or other unforeseen occurrences from competitive bidding requirements.

Plaintiff further contends that the "turnkey" exception to the competitive bidding process is not applicable here because that exception pertains only to Federally funded public housing projects (*see, Matter of Marino v Town of Ramapo*, 68 Misc 2d 44), and that by structuring the contract in this manner the parties were attempting to circumvent the competitive bidding requirements (*see, Albion Indus. Ctr. v Town of Albion*, 62 AD2d 478, *lv denied* 45 NY2d 710). This argument, however, is without merit because the contract was not subject to the competitive bidding statute in the first place due to the pre-1953 exemption set forth in the City Charter.

We also find no impropriety in the City Council's ratification of the contract after this action was commenced. A municipality may ratify a contract made on its behalf which it has the authority to make even if the contract was initially invalid due to a defective execution or because the municipal officer who purported to execute it did not have the requisite authority (*see*, 27 NY Jur 2d, Counties, Towns, and Municipal Corporations, § 1219, at 221-222; *see also, Seif v City of Long Beach*, 286 NY 382, 386-387; *Centereach Rentals v Town of Huntington*, 150 Misc 2d 462). Here, from the outset, the City Council had the authority under the City Charter to approve the contract without competitive bidding based on the pre-1953 local law. Thus, even accepting that the contract was not authorized pursuant to the "impossible or impracticable" exception set forth in the City Charter when initially executed, the City Council could authorize the contract at a later time, which it validly did after this litigation ensued.

■ We turn next to plaintiff's assertion that the contract violated NY Constitution, article VIII, § 1 and Local Finance Law § 101.00 (a) (1) and (2). These provisions prohibit a municipality from giving or loaning money or credit in aid of a private corporation. If the money was expended in furtherance of a public purpose, the municipality's action will not be invalidated (*see, Matter of Schulz v Warren County Bd. of Supervisors*, 179 AD2d 118, *lv denied* 80 NY2d 754). If the action is necessary for the common good and public in character, it is deemed to satisfy this requirement and the fact that a private benefit is also realized will not render the action invalid (*see, supra*). Here, the clear purpose of the contract is to benefit the public with the construction of a new courthouse and police facility (*see, Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536, *appeal dismissed* 83 NY2d 905, *lv denied* 84 NY2d 805). Thus, under the present circumstances,

we find no gift or loan in violation of the above-cited constitutional and statutory provisions (*see, Kradjian v City of Binghamton*, 104 AD2d 16, *mot to dismiss appeal granted* 64 NY2d 1039; *see also, Murphy v Erie County*, 28 NY2d 80).

There is also no violation of the requirement that a municipality pledge its full faith and credit for the payment of all indebtedness contracted by it (*see*, NY Const, art VIII, § 2; Local Finance Law § 100.00). The City is not financing Valenti's purchase of the site of the proposed facility. It is not obligated to pay anything to Valenti until construction is completed and title is conveyed by Valenti to the City.

We have examined plaintiff's remaining contentions and find them unpersuasive. Supreme Court's order should, therefore, be affirmed in all respects.

MERCURE, WHITE, CASEY and SPAIN, JJ., concur.

Ordered that the order is affirmed, without costs.